770 P.2d 809

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Stuart ROBINSON, Defendant–Appellant.**

**No. 17171.**

Court of Appeals of Idaho.

Feb. 23, 1989.

Alan E. Trimming, Ada County Public Defender, Boise, for defendant-appellant.

Jim Jones, Atty. Gen. and Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Stuart Robinson was found guilty by a jury in Ada County of attempted rape, I.C. § 18–306. He received a seven-year sentence, with a minimum confinement period of three years. I.C. § 19–2513. Robinson raises three issues on appeal. First, he contends that his right to remain silent and his right to counsel were violated during two custodial police interrogations. Second, he asserts that the district court erred by denying his motion for mistrial predicated upon a "threat" made to Robinson by the prosecuting attorney during the trial. Third, Robinson submits that he did not receive a fair trial due to continued, cumulative prosecutorial misconduct. We affirm the judgment of conviction.

I

Robinson first argues that the trial court erred by denying his motion to suppress incriminating statements that he had made during two custodial interrogations. Robinson asserts that during the first interrogation the investigating police officer, Detective Kenneth Smith, failed to honor Robinson's right to remain silent. Robinson also contends that his right to counsel was violated during a subsequent interrogation by Detective Smith. Because these assertions raise different issues of law, we will address each question separately.

A

We turn first to Robinson's claim involving the alleged violation of his right to remain silent. Robinson was apprehended and arrested in Boise on April 18, 1987, for suspicion of committing rape. Upon his arrest Robinson was given *Miranda* warnings, but told the arresting police officer, Gilbert Cobb, that he wished to remain silent. Officer Cobb honored Robinson's request. Robinson was then transferred to the Boise City Police Department and, approximately thirty minutes later, he was met in an interrogation room by Detective Smith. Detective Smith was informed that Robinson had previously been given *Miranda* warnings. However, Smith was unaware that Robinson had invoked his right to remain silent upon his arrest by Officer Cobb and he asked Robinson if he could talk to him about the alleged rape. While Detective Smith was reading Robinson his *Miranda* warnings, Robinson made several unsolicited incriminating statements. Detective Smith then finished reading Robinson the *Miranda* warnings, and subsequently obtained a written waiver of rights from Robinson. Robinson thereafter made additional incriminating statements concerning his involvement in the alleged rape. Robinson now contends that Detective Smith failed to honor his right to remain silent, which Robinson claims he invoked upon his arrest by Officer Cobb.

The right to remain silent in a custodial interrogation is a procedural safeguard extended to an accused to insure protection of his constitutional privilege against self incrimination. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also State v. Hall,*

111 Idaho 827, 727 P.2d 1255 (Ct.App.1986). When an accused invokes the right to remain silent during a custodial interrogation, the police must scrupulously honor the request. *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *State v. Moulds,* 105 Idaho 880, 673 P.2d 1074 (Ct.App.1983). However, the right to remain silent is not absolute—it does not terminate all questioning, but merely suspends the interrogation for a "substantial" time. *State v. Blevins,* 108 Idaho 239, 697 P.2d 1253 (Ct.App.1985). Determining whether statements made during such an interrogation are admissible requires a two-part inquiry; first, whether the police have honored the accused's right to halt the questioning; and second, whether statements later given by the accused were made voluntarily. *State v. Moulds, supra.* This is necessarily a factual inquiry encompassing the totality of circumstances surrounding the questioned interrogation. *Michigan v. Mosley, supra; State v. Hall, supra.* On appeal, we conduct an independent examination of the record to insure that this right has not been violated. *State v. Hall, supra.*

Based upon our review of the record—including a tape recording of the April 18, 1987, interrogation—we conclude that Robinson's right to remain silent was not violated. In doing so, we note that our holding is narrowly limited to the facts of this case. The record reveals that, upon Robinson's arrest, Officer Cobb did not attempt to question Robinson once he had invoked his right to remain silent. Further questioning was not begun until after Robinson had been transported to the city police department, had again been notified of his *Miranda* warnings, and had agreed to waive his rights and talk to Detective Smith. Furthermore, nothing in the exchange between Detective Smith and Robinson suggests that Detective Smith tried to abridge Robinson's right to remain silent during the station house interrogation. To the contrary, Robinson was eager to talk with Detective Smith at the station house, interrupting the detective as the *Miranda* warnings were being given. Although the interrogation by Detective Smith occurred only thirty minutes after Robinson had originally invoked his right not to be questioned by Officer Cobb, nothing in the record suggests that Robinson was denied an opportunity to reassess his interests in maintaining continued silence, nor does the record show that, had Robinson invoked his right to remain silent when interrogated by Detective Smith, his request would not have been scrupulously honored. *See People v. Quezada,* 731 P.2d 730 (Colo.1987) (interrogation commenced forty-five minutes after accused invoked right to silence).

In reaching our decision, we note a distinction between the situation in the present case, and the situation where the accused is subjected to successive station house interrogations. In the present case, Officer Cobb's questioning of Robinson was an "interrogation" only in the sense that the accused was asked if he wished to make any type of voluntary statement at the time of his arrest. This type of questioning is standard police procedure; the accused is under no pressure to talk with the arresting police officer, and frequently chooses not to do so. To the contrary, an accused who is subjected to repeated station house questioning bears the full brunt of the interrogation process. Often, the accused must endure repeated questioning from one or several interrogators, with interrogations spanning considerable periods of time. Under these circumstances, a short time interval between interrogations may be indicative of prohibited police behavior. Had Robinson's initial questioning been more rigorous, we may have been inclined to view the thirty-minute interval between his arrest and interrogation by Detective Smith in a different light. However, under the circumstances of this case, we see no reason to believe that Robinson's right to remain silent was not scrupulously honored during his arrest and subsequent interrogation by Detective Smith.

■ We also are unpersuaded by Robinson's assertion that his initial invocation of the right to remain silent upon his arrest prohibited the police from questioning him about the same crime at a later interrogation. *See Michigan v. Mosley, supra.* In

*State v. Blevins, supra,* we said that our analysis should be "somewhat more rigorous" when reviewing multiple interrogations focusing on the same crime, but we nevertheless concluded that incriminating statements given in subsequent interrogations concerning the same crime or crimes would be admissible if those statements were voluntarily made. *Id.,* 108 Idaho at 242, 697 P.2d at 1256. The tape recording of Robinson's interrogation reveals that he voluntarily related his version of the alleged rape to Detective Smith.

Consequently, we hold that Robinson's right to remain silent was not violated during Smith's interrogation on the day of the arrest.[1] The order denying suppression of incriminating statements made during that interrogation is therefore affirmed.

## B

■ We next address Robinson's assertion that he was denied the right to counsel during a second interrogation conducted by Detective Smith. Two days after Robinson's arrest, Smith met with Robinson to "go back over [Robinson's] story." At the beginning of the interrogation, Robinson was again given *Miranda* warnings. As we shall explain in more detail below, Robinson asked Detective Smith if he, Robinson, should have an attorney present during the interrogation. Detective Smith told Robinson that if he wished to have an attorney present during questioning, then the questioning would have to be suspended until an attorney was appointed for him. In response, Robinson said that "nothing's really changed" from what he had told the detective during the first interrogation, and Robinson acceded to further questioning. Robinson thereafter made statements concerning the alleged rape incident. Robin-

son now argues that Detective Smith's questioning violated Robinson's fifth and sixth amendment rights to counsel, and that upon his mention of an attorney, all further interrogation should have ceased.

An individual's right to counsel is a fundamental liberty protected by both the fifth and sixth amendments to the United States Constitution. *Patterson v. Illinois,* 487 U.S. ——, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988).[2] Federal and state courts have long considered how and when an accused may invoke protection of this right during police interrogations. *See State v. Moulds, supra.* In *Miranda v. Arizona, supra,* the United States Supreme Court stated that when an accused indicates "in any manner" that he wishes to consult with an attorney, all interrogation must cease. 384 U.S. at 444–45, 86 S.Ct. at 1612.

However, unlike the right to remain silent, the accused's right to counsel cannot be waived merely by the passage of time. *See Michigan v. Mosley, supra.* In *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), the Supreme Court held that once the accused invokes the right to counsel, the police may not initiate further interrogation until counsel has been made available to the accused, or unless the accused himself initiates further conversation with the police. This per se protection is available to the accused only if "he has *clearly asserted* his right to counsel." *Id.* at 485, 101 S.Ct. at 1885 (emphasis added). Thus, *Edwards* modified the "any manner" language of *Miranda.*

*Edwards* did not, however, answer the question of how the police should respond to an equivocal request for counsel by the accused. We answered this question, as far as Idaho law is concerned, in *State v.*

---

1. Our holding is not predicated in any respect upon the circumstance, noted by the state, that Detective Smith was unaware of Robinson's prior invocation of his right to remain silent. The requirement that the police "scrupulously" honor this right, once invoked, necessarily includes a police duty to adopt communication procedures, or to maintain other safeguards, designed to prevent improper reinterrogation of an accused by any officer.

2. In *Patterson,* the Supreme Court stated that an accused who has been admonished with *Miranda* warnings (sufficient to inform the accused of his fifth amendment rights) has also been apprised of his sixth amendment right to counsel so that, in most cases, a waiver following receipt of the *Miranda* warnings also constitutes a waiver of the sixth amendment right as well. 487 U.S. at ——, 108 S.Ct. at 2396–97.

*Moulds, supra.* There, we adopted a pragmatic approach to determine whether further questioning by the police abridges a defendant's right to counsel. We noted that:

> [W]hen an accused person is undergoing a custodial police interrogation and makes an equivocal request for counsel, questioning on the subject matter of the investigation must be suspended. Further questioning must be limited to clarifying the request. If the accused, without persuasion or inducement by the police, indicates that he does not want counsel present at that time, the interrogation may resume. Otherwise, the interrogation must be discontinued until counsel has been provided, or the accused himself reinitiates a dialogue with the police about the investigation.

105 Idaho at 888, 673 P.2d at 1082. Our rule in *Moulds* was cited by the United States Supreme Court in *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), as exemplifying an approach to the problem of equivocal requests for counsel. 469 U.S. at 96 n. 3, 105 S.Ct. at 493 n. 3. However, *Smith* went on to address a narrower question: whether an unequivocal request for counsel could be rendered equivocal—and therefore subject to clarification—by subsequent statements of the accused in response to questions asked by the police. The Supreme Court said no:

> [A]n accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself. [Emphasis original.]

469 U.S. at 100, 105 S.Ct. at 495.

In this case, we must decide whether Robinson made an equivocal or unequivocal request for counsel during the second interrogation, and whether Detective Smith's subsequent comments in any way induced Robinson to change his mind about the interrogation. In doing so, we again conduct an independent review of the record—including a tape recording of the second interrogation—to determine whether Robinson's right to counsel was violated. *State v. Hall, supra.*

Our review of the tape recorded interrogation reveals the following. At the beginning of the interrogation, Robinson was given his *Miranda* warnings by Detective Smith. Then, in a virtually unbroken expression punctuated only by the remarks "sure" and "okay" by the detective, Robinson said, "Okay, now if umm okay, I do want a lawyer," and a moment later, "But if I talk to you now should I have one present?" After Robinson made this statement, Detective Smith attempted to clarify it, evidently in conformity with *Moulds.* Robinson responded, "Well, I already talked to you so we can talk again, you know." Nevertheless, Detective Smith—showing commendable restraint—sought a more specific clarification of Robinson's intent to talk without an attorney. Robinson then said, "I probably shouldn't ... oops, okay, I'm sorry [apparently brushing the microphone]." The detective asked, "But you want to, is that correct?" Robinson answered, "Yeah...." Although Detective Smith's question might appear argumentative on paper—and might raise some concern as to whether it was a subtle form of persuasion or inducement (prohibited by *Moulds* )—the spoken words on the audio tape do not convey this impression. Thereafter, Detective Smith persisted in obtaining a clarification, and Robinson eventually answered, "Well, let's just go ahead and go over what we did [in the prior interview]." Detective Smith then confirmed Robinson's decision by asking, "So you wanna talk to me now without a lawyer?" Robinson answered, "Uh huh." Detective Smith then asked another confirming question, "Is that correct?" Robinson responded, "Yeah."

We conclude that Robinson's initial expression of a desire for the presence of counsel during interrogation was equivocal. Robinson's progression from a seemingly unequivocal statement to an equivocating question was not in response to any question by Detective Smith. *See Smith v. Illinois, supra.* Furthermore, Detective Smith's clarifying questions were permissible under the rule of *Moulds,* as part of an ongoing, good faith effort to clarify Robinson's equivocal request for counsel. The

record indicates no effort on Detective Smith's part to persuade Robinson to waive his rights. Nonetheless, Robinson agreed to further questioning, disclosing that, regardless of the presence of an attorney, his version of the incidents concerning the alleged rape would remain the same.

In summary, we are satisfied that the detective's actions were within the scope of proper inquiry as outlined in *State v. Moulds, supra*. We are also convinced that Robinson intended to continue his dialogue with Detective Smith. We therefore hold that Robinson's right to counsel was not violated. We affirm the order denying suppression of Robinson's statements made during the second interrogation.

## II

■ Next, Robinson contends that he should have been granted a mistrial because the prosecutor threatened him during the trial. A summary of the incident, as found by the trial judge, reveals that during a recess at the close of the state's case the prosecutor initiated a conversation with Robinson. Robinson's attorney was not present. The prosecutor asked Robinson if he intended to take the witness stand in his own defense. When Robinson responded in the affirmative, the prosecutor told Robinson that the scope of his testimony was "up to him," referring to Robinson; and that it was Robinson's "problem," not his lawyer's. The prosecutor then commented, according to Robinson, that the direct examination would be "nothing compared to what she, the prosecutor, was going to do on cross-examination." From these statements, the trial judge concluded that the prosecutor intended to subject Robinson to a "significant and rigorous" cross-examination.

■ Robinson decided not to testify. Instead, he moved for a mistrial. However, the trial judge concluded that, although the prosecutor's actions were improper,[3] a mis-

trial was not warranted. On appeal, Robinson argues that the prosecutor's statements constituted threats which chilled his due process rights and denied him a fair trial, and therefore a mistrial should have been granted. *See United States v. Goodwin*, 625 F.2d 693 (5th Cir.1980).

In a criminal trial, a defendant has a right to testify in his own defense. *Aragon v. State*, 114 Idaho 758, 760 P.2d 1174 (1988). In this case, the question is whether this right was impermissibly burdened and, viewed in the context of the entire record, resulted in reversible error. *State v. Urquhart*, 105 Idaho 92, 665 P.2d 1102 (Ct.App.1983). We believe it did not. Although we do not condone the prosecutor's conduct in initiating the conversation with Robinson, we cannot say that the prosecutor's statements obstructed Robinson's ability to testify. Any witness who testifies at a trial, be it civil or criminal, is subject to the possibility of cross-examination. The prosecutor's comments did nothing more than apprise Robinson of the state's right to question his testimony. Furthermore, the trial judge indicated to Robinson that the trial court, and not the prosecutor, controlled the limits of cross-examination, and that any questioning would be conducted within relevant evidentiary limits.

We further note that Robinson has not identified any specific testimony he would have given, but allegedly was deterred from giving by the prosecutor's remarks. The problem is analogous to one in which a defendant does not testify and later claims that his decision was motivated by the prospect of improper impeachment, during cross-examination, with evidence of a prior criminal offense. In such a circumstance an appellate court will not speculate about the content and impact of testimony never given. *See Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *State v. Garza*, 109 Idaho 40, 45, 704 P.2d 944, 949 (Ct.App.1985).

---

**3.** The prosecutor's actions in initiating the conversation with Robinson could be construed as a violation of Idaho Rule of Professional Conduct 4.2, prohibiting a lawyer from communicating "with a party the lawyer knows to be represented by another lawyer" without consent of that party's lawyer. IDAHO STATE BAR DESK BOOK—SECTION E: IDAHO RULES OF PROFESSIONAL CONDUCT, Rule 4.2 (1987).

We hold that the prosecutor's comments did not create reversible error, and that Robinson's right to testify was not violated. We therefore sustain the denial of Robinson's motion for a mistrial.

### III

■ Finally, Robinson argues that a general pattern of alleged misconduct by the prosecutor during these proceedings denied him the right to a fair trial. Robinson submits that there were four incidents which cumulatively infringed upon his right to due process. Those incidents are as follows:

1. Many of the discovery responses provided to the defense had the witness' names, addresses and phone numbers blacked out.

2. During the state's direct examination of the victim, the prosecutor held her hands to her own throat in a choking gesture, and asked the victim if Robinson did "anything else with his hands." The victim responded that Robinson had attempted to choke her.

3. During her closing argument, the prosecutor showed the jury two photographs—one of the victim and one of Robinson—and then proceeded to describe Robinson's character.

4. While arguing against Robinson's motion for a new trial, the prosecutor agreed with the defense that the trial had not been fair.

By inference, we assume that Robinson also wishes us to consider the cumulative effect of the prosecutor's comments about cross-examination if Robinson testified, as discussed in Part II, *supra.*

■ Although our system of criminal justice is adversarial, the prosecutor, as a representative of the state, must nevertheless be fair to the defendant. *See State v. Estes,* 111 Idaho 423, 725 P.2d 128 (1986). Whenever a prosecutor oversteps the bounds of fairness the defendant may be deprived of his right to receive a fair trial. *Id.* Thus, in evaluating whether there is a breach of this standard, we must determine whether the prosecutor's conduct could have materially affected the jury's verdict

finding Robinson guilty of attempted rape. *State v. LePage,* 102 Idaho 387, 630 P.2d 674 (1981), *cert. denied, LePage v. Idaho,* 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981). In cases involving cumulative error, we will determine whether the accumulation of irregularities—each possibly harmless by itself—may in the aggregate show the absence of a fair trial. *State v. Buzzard,* 110 Idaho 800, 718 P.2d 1238 (Ct.App.1986).

■ In this case we conclude that the prosecutor's conduct did not deprive Robinson of his right to receive a fair trial. To begin with, although Robinson complained that the witness lists he received were inadequate for his pretrial discovery, he did in fact receive the names of witnesses before trial. Furthermore, Robinson did not object to the witness lists until midway through the trial, and by that time, any error associated with the pretrial discovery requests had dissipated.

■ Next, any error attributed to the prosecutor's closing argument while using the photographs was effectively cured by the trial judge. Our review of the record discloses that immediately after the prosecutor asked the jury to look at "the type of person that we know the defendant is," the trial judge sustained an objection by Robinson and admonished the prosecutor to "change her tact" (sic). Contrary to Robinson's claim, the prosecutor was not allowed to then describe Robinson's character. If anything, the inference that can be drawn from the exchange is that the prosecutor hurt her own case by incurring the court's admonishment.

We also are unpersuaded by Robinson's claim that the prosecutor admitted the trial was unfair to Robinson. In fact, the statement made by the prosecutor—in the context of Robinson's motion for a new trial—was that the victim, rather than Robinson, had not received a fair trial.

Furthermore, the prosecutor's comments concerning Robinson's cross-examination (see Part II, *supra*) did not constitute error and had no bearing on Robinson's ability to receive a fair trial. We have deter-

mined that the conversation between the prosecutor and Robinson did not impermissibly chill Robinson's right to testify in his own behalf. Moreover, the comments were made outside the hearing of the jury, avoiding influence on the jury's thought-process.

■ This leaves us with the prosecutor's gesture made during her direct examination of the victim, when the prosecutor put her hands to her own throat. At the time, the prosecutor was questioning the victim about a struggle which occurred between the victim and Robinson shortly before the alleged rape. The prosecutor asked the victim where Robinson had placed his hands upon her while he attempted to subdue her. Although the state argues that the victim was not looking at the prosecutor at the time the prosecutor made the gesture, it is possible that the prosecutor's gesture may have been observed by jurors, thereby influencing their minds. However, we do not believe that this circumstance alone was sufficient to deprive Robinson of a fair trial. The effect of the prosecutor's gesture was the same as if she had asked the victim a leading question, such as "did he have his hands around your throat as he tried to subdue you?" A timely objection by the defense counsel would have cured any error arising from the prosecutor's actions. Errors due to leading questions are common during trial, and generally do not serve as a basis for reversal. In this case, we do not believe that the prosecutor's conduct was any more harmful than the error attributed to asking such a leading question. We therefore hold that there is insufficient evidence of prosecutorial misconduct in this case to warrant a new trial.

Based on the foregoing conclusions, Robinson's judgment of conviction is affirmed.

BURNETT and SWANSTROM, JJ., concur.