827 P.2d 715

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Noel PUENTE–GOMEZ, Defendant–Appellant.**

Nos. 18736, 19037.

Court of Appeals of Idaho.

March 5, 1992.

Van G. Bishop, Nampa, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Noel Puente–Gomez (Gomez) was charged with committing lewd and lascivious conduct with a minor under the age of sixteen. I.C. § 18–1508. Gomez, a twenty-one year old male, was tried for having committed the lewd conduct with a fourteen-year old girl. What appears to have been a consensual period of "cruising" in his car, drinking wine coolers, and kissing and hugging, turned into a forced attempt to engage in sexual intercourse. A jury found him guilty, and the court imposed a determinate seven-year period of confinement to be followed by an additional indeterminate seven-year period. Gomez filed a motion under Idaho Criminal Rule 35 to reduce his sentence, which was denied. He appeals to this Court raising three separate issues concerning his interpreter, the information used at sentencing and the length of his sentence. We affirm.

### Questions Presented

1. Did the court err when it appointed an interpreter but did not inquire after the appointment whether Gomez could understand the proceedings or the interpreter?

2. Did the court err by refusing to delay sentencing until after a sexual abuse evaluation could be completed?

3. Did the court err when it denied the motion to reduce the sentence?

### 1. The Interpreter

Gomez does not directly challenge the court's appointment of an interpreter. Instead, he argues that the court never affirmatively determined whether he and his two interpreters could understand each other and therefore whether he could understand the proceedings. He argues that the mere presence of an interpreter did not assure that he understood the translations and the court should have inquired to see if Gomez—a citizen of Mexico who did not speak English—understood both the interpreter and the proceedings, and thus whether he was able to assist in his own defense. A separate part of Gomez's argument is that the court never had his interpreter formally sworn, but allowed her to operate under a continuing oath that "is not explained in the record."

Early in the proceedings, at the hearing on the state's motion to obtain evidence of identifying physical characteristics, the judge asked Gomez if he needed an interpreter. Gomez replied "Yeah," and an interpreter was obtained. From this stage and at every succeeding stage in the proceedings one of two different interpreters was provided. The record shows that, except for the hearing on the initial motion to compel, Gomez was assisted by the same interpreter, a Mrs. Zamora, throughout the proceedings. At no time did Gomez challenge Mrs. Zamora's qualifications, object to her translations, or express concern about her oath.

Idaho Code § 9–205 provides that a court shall appoint a qualified interpreter when a party or witness to a criminal action does not understand or speak English. The statute also provides that the interpreter "shall be sworn to accurately and fully interpret the testimony given ... before assuming his duties as interpreter." I.C. § 9–205. *See also* I.C.R. 28.

The requirement of an oath is repeated in I.R.E. 604, which states "[a]n interpreter is subject to the provisions of these rules relating to qualification as an expert [witness] and the administration of an oath or affirmation that [s]he will make a true translation." An interpreter is considered a witness in the sense that the accuracy of her translation is a question of fact for the jury which may be disputed by counsel. Failure to swear an interpreter is

not reversible error per se, and the testimony provided by an unsworn interpreter is not nullified by a lack of oath. *People v. Carreon*, 151 Cal.App.3d 559, 198 Cal.Rptr. 843 (1984). Failure to require an oath of an interpreter does not require reversal in the absence of a suitable objection at trial. 32B AM.JUR.2D *Federal Rules of Evidence* § 344, p. 723 (1982). An objection is required to preserve the error in order to allow the court to correct the error.

In the absence of [an] objection, the presumption of regularity is an adequate answer to the raising of such a matter on appeal. In this case, the presumption would include that officers, such as official court interpreters, will do their duty, and an oath will be properly administered. In addition, irregularity in failing to swear a witness is waived where he is permitted to testify without objection. This is because an alleged error in swearing can easily be cured if the objection is raised at the time. [Citations omitted.]

*State v. Navarro*, 132 Ariz. 340, 342, 645 P.2d 1254, 1256 (App.1982).

Whether an interpreter is qualified is a question of discretion for the court. *State v. Marcham*, 160 Ariz. 52, 770 P.2d 356 (App.1988); *State v. Van Pham*, 234 Kan. 649, 675 P.2d 848 (1984); *State v. Coria*, 39 Or.App. 507, 592 P.2d 1057 (1979); *Valladares v. U.S.*, 871 F.2d 1564 (11th Cir.1989). The competency of an interpreter must be challenged prior to the time she begins translating, and it is presumed she will translate accurately. *State v. Marcham, supra.* The defendant bears the burden of negating this presumption.

In *Navarro*, the defendant claimed that the interpreter did not place the witness under oath in Spanish and that the witness was not sworn in a manner calculated to "awaken the conscience and impress the mind" as provided by Arizona Rules of Evidence 603, which is identical to I.R.E. 603. Although *Navarro* can be factually distinguished because it involved an interpreter giving an oath instead of receiving one, the thrust of the dispute is the same: the oath given to a witness was not objected to at trial and invocation of the power of the court to remedy any alleged irregularity was thus waived. In the instant case, the interpreter at appropriate times testified that she was under a "continuing oath." Her translations were received without objection or any other signs that the defendant could not understand her. Therefore, any objection as to the sufficiency of her oath was waived. *See* 81 AM. JUR.2D *Witnesses* § 414, p. 421 (1976); *United States v. Perez*, 651 F.2d 268 (5th Cir.1981) (failure to swear interpreter not error); *Solis v. State*, 647 S.W.2d 95, 99 (Tex.App.1983) (where official court interpreter was sworn at time of appointment to serve and no objection is made to his failure to be resworn at trial, no error is preserved); *State v. Sanchez*, 25 Conn. App. 21, 592 A.2d 413, 416–17 (1991) (failure to object at deposition that interpreter was not sworn was a waiver of the objection at trial). Further, Gomez has failed to indicate that Mrs. Zamora was not qualified or that her translations were somehow deficient. Therefore, she is presumed to have translated accurately.

### 2. Psychological Evaluation

Gomez asserts that the court erred when it refused to continue the sentencing hearing a second time to allow him to undergo a psychological evaluation, alternatively referred to in the record as a sexual abuse evaluation. He contends that this issue merits reversal because the presentence report contained statements by two social workers that Gomez presented a risk to re-offend, yet no formal evaluation was performed to corroborate or negate these statements.

Idaho Criminal Rule 32, which describes the standards governing presentence reports, states that the presentence investigator may recommend a psychological evaluation, "but the decision as to whether to order a psychological evaluation is to be made by the sentencing judge." I.C.R. 32(d). Thus, whether to order a psychological evaluation is a question left to the court's discretion. *State v. Bylama*, 103 Idaho 472, 649 P.2d 1228 (Ct.App.1982);

*State v. Anderson,* 103 Idaho 622, 651 P.2d 556 (Ct.App.1982).

In this case, Gomez was found guilty on January 4, 1990. Sentencing was set for April 9, 1990, but continued until April 24, to give the defense time to arrange a psychological evaluation. On April 18, counsel moved for a second continuance. At the April 24 sentencing hearing, Gomez objected that he had not yet been evaluated, due to the fact that the two testing organizations contacted were unable to schedule an appointment for him. For several reasons, the court denied the second motion to continue.

The court noted that, at the first hearing to impose sentence, counsel for Gomez had stated that there was no legal cause why sentencing should not proceed. Also, after hearing this response, the court indicated it had read several statements in the presentence report that Gomez was a high risk to re-offend, prompting counsel to move for the continuance. The statements included those of two different social workers who commented that Gomez did not cooperate in group counselling sessions, had admitted "going to bed" with the victim, and presented a high-risk of re-offending. The deputy warden of the North Idaho Correctional Institution had reported that Gomez's attitude was such that he was not amenable to treatment because he did not see his actions as a problem or concern. In addition, the presentence investigator had concluded that Gomez was a "serious threat" to the community and was not amendable to treatment because of his "cavalier" attitude regarding the crime.

However, the court also considered Gomez's positive performance while serving a period of retained jurisdiction on a separate charge of grand theft by receiving or possessing stolen property. The jurisdictional review committee had written asking for a sixty-day extension, noted Gomez's generally good evaluations, and finally on March 20, 1990, had recommended probation on the theft charge. The court also considered the presentence report in that case, written in October, 1989. The report recommended incarceration.

The court concluded that counsel could have arranged for Gomez to obtain a psychological evaluation while serving the rider on the theft charge, and that because Gomez was convicted in this case in January, 1990, and sentencing had not occurred until April 24, the intervening four months provided an adequate amount of time to obtain an evaluation.

The court apparently felt that a psychological evaluation would be of little help in this case. We agree. The sentencing judge, who also presided at trial, commented that he was not concerned with Gomez being a pedophile; the evidence in the record did not support such a finding. However, the evidence indicated that Gomez had forced sexual contact with an underage female, and then acted very cavalierly regarding the act. A psychological evaluation might have shown a propensity toward sexual deviancy, but would add little to the finding that Gomez, on the date in question, got the victim drunk and forced himself on her. The court expressed concern that Gomez's lack of compunction for his act indicated he posed a significant risk to the community, because his attitude showed he would not be concerned about becoming involved with young girls in the future. Thus, the court denied the second continuance.

We are aware of the Idaho cases which have held that a presentence report was deficient because it lacked a psychological evaluation. For instance, in *State v. French,* 95 Idaho 853, 522 P.2d 61 (1974), the Idaho Supreme Court held that a presentence report concerning a rape defendant with no criminal background and a positive social history was deficient because it contained no evaluation. In *French,* the report stated that the defendant could not explain the aberrant rape at knife-point of his wife, except that he was angry because of her infidelities and that she had left him a few days before the attack. In other words, it was a mere recitation of facts and the defendant's view of the crime. The report also failed to discuss rehabilitative alternatives.

In this case, however, although Gomez lacked a history of sexual criminal behavior, he did have a history of other criminal acts, including a conviction for grand theft. Further, though he denied at trial that he committed a lewd and lascivious act, he apparently made contrary statements while in counselling sessions after being convicted. He showed no remorse for his act, and acted in a way that led corrections' employees to conclude that he did not think his actions were wrong. A psychological evaluation would have added little to these observations, or the court's ability to weigh the conclusions of correction's employees against its own observations and other evidence in the record.

### 3. Sentence

Finally, Gomez appeals from the denial of his Rule 35 motion to reduce his sentence. He does not argue that the sentence is illegal. His fourteen-year period of confinement is within the range provided by statute. I.C. § 18–1508. Instead, he asserts that the sentence does not fit the facts of his case.

In such a situation, a motion to reduce a lawful sentence essentially is a plea for leniency, which may be granted if the original sentence was unduly severe, but which is addressed to the sound discretion of the sentencing court. *State v. Lopez*, 106 Idaho 447, 680 P.2d 869 (Ct.App. 1984). We will not disturb the lower court's decision to grant or to deny a request for reduction of sentence in the absence of an abuse of discretion. *State v. Sutton*, 106 Idaho 403, 679 P.2d 680 (Ct. App.1984). In conducting our review, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Lopez, supra; State v. Forde*, 113 Idaho 21, 740 P.2d 63 (Ct.App.1987).

A sentence does not represent an abuse of discretion if it is shown to be reasonable upon the facts of the case, if it appears to accomplish the objective of protecting the good order of society, and if it is imposed to achieve any or all of the related goals of deterrence, rehabilitation or retribution. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). A sentence of confinement that is longer than necessary to serve these goals is unreasonable. *Toohill, supra*. Because Gomez's sentence was imposed under the Unified Sentencing Act, I.C. § 19–2513, we will consider the minimum fixed period, or seven years, to be the probable term of his confinement. *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). We are unable to speculate as to a possible longer term beyond the minimum because the Commission on Pardons and Parole is vested with the discretion to grant or deny parole at any time after completion of the fixed term and until the expiration of the maximum term. I.C. § 19–2513. *See State v. Bartlett*, 118 Idaho 722, 800 P.2d 118 (Ct.App.1990). When reviewing a sentence, we examine the facts in the record independently and focus on the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

This was a crime of violence. Although testimony indicated that Gomez and the victim had been cruising consensually and had kissed and hugged each other without objection, ultimately Gomez forced her into the backseat of his car and attempted intercourse with her. Previously, Gomez had been convicted of grand theft by possessing stolen property, a conviction stemming from an incident that occurred near the time of his actions in the instant case. He earlier had been charged with battery, aggravated assault, and malicious injury to property, however, those charges were dismissed. He also had been charged with disturbing the peace, driving under the influence, and driving without a license or insurance. The presentence report for the theft charge recommended incarceration. The presentence report in the instant case also recommended incarceration, and reveals that Gomez denied the charges contrary to investigative reports, the eventual finding of the jury, and Gomez's own statements during counselling.

When denying the Rule 35 motion, the court found that "based on Defendant's past conduct, Defendant is a definite risk to commit another crime so that protection of society precludes any reduction of sentence." The court stated that by his actions and attitude, Gomez indicated that if the opportunity arose again to become involved with a teenage girl, Gomez would feel no compunction about pursuing such an activity and, in the future, his aggressive nature may result in a crime of greater violence. The court specifically made findings addressing deterrence, rehabilitation, Gomez's criminal history, the seriousness of the crime, and his disregard for the victim. The court concluded that Gomez had failed to show that the sentence was unduly severe. We hold that the court did not abuse its discretion by denying the motion.

### Conclusion

The court acted properly when it exercised its discretion and appointed an interpreter to assist Gomez with the proceedings. The record indicates that Gomez and his counsel did not object to the interpreter's oath, qualifications, or translations. Without such an objection, the issue cannot be raised on appeal. The denial of Gomez's second motion to continue sentencing was also a decision made within the court's discretion, as was its decision not to order a psychological evaluation. Based on the record, the court could conclude that such an evaluation would not have been helpful in sentencing. Finally, Gomez's Rule 35 motion was properly denied. The judgment, sentence, and order denying relief under I.C.R. 35, are affirmed.

SWANSTROM and SILAK, JJ., concur.