883 P.2d 704

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Richard Jay DRENNON, Defendant–Appellant.**

No. 18999.

Court of Appeals of Idaho.

July 8, 1994.

Rehearing Denied Sept. 23, 1994.

Petition for Review Denied Nov. 9, 1994.

Van G. Bishop, Nampa, for appellant.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

A jury found Richard Drennon guilty of committing a lewd and lascivious act with his young daughter. He appeals from his judgment of conviction and sentence, raising a number of issues. First, he asserts that prosecutorial misconduct and evidentiary errors occurred during his trial. Next, Drennon contends the district court erred in instructing the jury; by imposing an excessive sentence following his conviction; and abused its discretion when determining his I.C.R. 35 motion to reduce his sentence. Finally, Drennon challenges the conclusions reached in a hearing regarding his performance in the retained jurisdiction program. We affirm.

Drennon was charged with one count of lewd and lascivious conduct with a child under the age of sixteen, I.C. § 18–1508. The child was Drennon's natural daughter, who was approximately nine or ten-years old when the conduct occurred between March, 1988, and January, 1989. A jury found him guilty, and the district court imposed a unified sentence consisting of a minimum period of confinement of eighteen years to be followed by an indeterminate life term. Drennon filed an I.C.R. 35 motion requesting leniency in sentencing. The district court granted the motion in part and reduced the minimum confinement term of the sentence to four years, but left the indeterminate life term in place.

## ISSUES

On appeal, Drennon asserts that several errors occurred during and after trial which denied him due process of law. He argues that (1) the prosecutor engaged in reversible misconduct when, during the opening statement to the jury, the prosecutor referred to Drennon's conduct as "incest" and stated that Drennon acted "shamelessly;" (2) the district court erroneously allowed a police officer to state his opinion that Drennon was not telling the truth when the officer interviewed him; (3) the district court erred when it allowed the State to present evidence of uncharged sexual misconduct with Drennon's daughter, in violation of I.R.E. 404(b); (4) the testimony of the victim described an act of intercourse by Drennon, which act was not within the allegations of lewd conduct filed against him; (5) the district judge erred by refusing to instruct the jury on lesser included offenses; (6) the district court imposed an excessive sentence initially, and erred when it only partially granted Drennon's motion for a reduced sentence; (7) cumulative errors resulted in an unfair trial; and (8) Drennon did not receive a meaningful post-trial hearing regarding whether he should be placed on probation or whether the district court should relinquish retained jurisdiction and order Drennon to be incarcerated. We address each issue in turn.

## 1. Prosecutorial Misconduct

■ Drennon asserts that his due process rights were violated when the prosecutor made the following opening statement to the jury:

> May it please the Court, defense counsel. The defendant here as you've heard is charged with committing lewd and lascivious conduct with his daughter ..., a child under 16 years of age. More specifically as you also heard he is charged with having genital to genital contact. Now, when we have what's called "lewd and lascivious conduct," legal terms, we talk about that between a father and a daughter, and outside the courtroom that's called "incest." And ladies and gentlemen, that's what this case is about. It's a case about incest and how the defendant here shamelessly took advantage of his daughter, took advantage of his wife, took advantage of his family. And he did this to gratify his sexual desires. He did it right under their noses and he denied it and that's why we're here today.

Drennon argues that incest is an enumerated crime in Idaho with which he was not charged. Therefore, he contends the prosecutor misled the jury by using that term. He also asserts that the prosecutor's statement that Drennon "shamelessly took advantage" of his daughter carried an immoral connotation and exceeded the scope of proper opening argument.

The transcript indicates that Drennon did not object when the prosecutor made these statements. "In the absence of a timely objection to an alleged error at trial, an appellate court generally will not consider the alleged error on appeal." *State v. Reynolds*, 120 Idaho 445, 448, 816 P.2d 1002, 1005 (Ct.App.1991). Under certain circumstances, however, failure to object to statements in an opening argument might not constitute a waiver of the objection. *Id. See, e.g., State v. Sharp*, 101 Idaho 498, 503, 616 P.2d 1034, 1039 (1980) (inflammatory statements). Also, where an alleged error is claimed to have deprived the defendant of his constitutional right to a fair trial, review is warranted under the "fundamental error" doctrine. *Reynolds*, 120 Idaho at 448, 816 P.2d at 1005; *State v. Knowlton*, 123 Idaho 916, 918–19, 854 P.2d 259, 261–62 (1993). Under that doctrine, our analysis of the issue requires two steps. We first inquire whether the prosecutorial conduct complained of was improper; and then, if it was, we consider whether the misconduct prejudiced the defendant's right to a fair trial, or whether the error was harmless. *Id.*

Our review is guided by the principle that the prosecutor's role is to present the government's case earnestly and vigorously, using every legitimate means to bring about a conviction. *Reynolds*, 120 Idaho at 449, 816 P.2d at 1006. The prosecutor must also see, however, that justice is done and that every criminal defendant receives a fair trial. *Id.* In that regard, restrictions exist beyond which the prosecutor's argument may not go without running afoul of its function. For instance, the argument should not be used to inflame the passions or prejudice of the jury or to inject issues broader than the guilt or innocence of the accused under the controlling law. *Id.* at 449–50 n. 2, 816 P.2d

at 1006–07 n. 2. We recognize, however, that counsel are afforded considerable latitude in their arguments. *Id.* at 449, 816 P.2d at 1006. The propriety of an argument will depend largely on the facts of each case. *Id.* at 449–50, 816 P.2d at 1006–07.

The use of the words "incest" and "shamelessly" likely was intended to win the jury's sympathies and cast a moral pall on Drennon's conduct. We do not conclude, however, that use of the terms prompted consideration of an uncharged crime, deprived Drennon of a fair trial, or constituted reversible error, considering the context of the remarks and the facts developed at Drennon's trial. The jury had learned before hand, and heard again from the prosecutor in her statement, that Drennon was charged with lewd and lascivious conduct, including genital-genital contact. Drennon's assertion that the word "incest" was erroneous because it is defined to mean intercourse in I.C. § 18–6602 rather than mere sexual contact is without merit. In context, the prosecutor's use of the word was intended to generically describe a father's act of having sexual contact with his child. Further, Drennon's counsel discussed the victim's expected testimony—which counsel interpreted as intercourse—in his own opening remarks to the jury. The prosecutor's use of the term "shamelessly" was allowable commentary. To claim that the prosecutor committed misconduct by lending an "immoral connotation" to Drennon's alleged sexual contact with his daughter is to say the prosecutor should not do her job. Based upon the evidence presented, we conclude that no reversible error occurred as a result of the prosecutor's remarks.

### 2. Eliciting Comments about Drennon's Truthfulness

Next, Drennon asserts that the district court erred when it allowed the prosecutor to elicit from an investigating officer testimony that Drennon appeared not to have been truthful in his interview with the officer. We conclude there was no error in this regard.

Detective Tim Randall had interviewed Drennon after Drennon's daughter came forward with her allegations. While cross-ex-

amining the detective at trial, Drennon's counsel asked if, during the interview, Drennon appeared to be "shocked" or "shaken" by his daughter's allegations, and whether Drennon was crying. The detective stated that Drennon was "theatrical." On redirect examination, the prosecutor attempted to define the term and asked the detective why he chose the word "theatrical." Detective Randall stated that Drennon's emotions "didn't seem real." Drennon's counsel objected, claiming that the detective was "not competent to make that kind of decision." The court overruled the objection, stating that it was a proper lay opinion regarding Drennon's emotional reaction and complied with I.R.E. 701. When the prosecutor asked Detective Randall to explain why he felt Drennon's emotions were not real, the detective stated that "as far as body language— the way he responded—I felt he was deceptive in the—in the responses that he was giving me."

Detective Randall's testimony was admissible. His statement that Drennon appeared "theatrical" required explanation in order for the jury to understand the response. Drennon's counsel opened the door to such an explanation when he asked if Drennon appeared to be "shocked" or "shaken." The explanation accorded with I.R.E. 701 because it was limited to an opinion which was "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue."

### 3. Evidence of Uncharged Sexual Misconduct

 A grand jury returned a one-count indictment against Drennon, accusing him of a single act of rubbing his penis against his daughter's legs near her vaginal area and ejaculating, with the intent to gratify his sexual desires. According to the victim, this particular act was performed in her parent's bedroom when her mother was away. At trial, the court allowed the State to present evidence that Drennon had committed other acts of sexual misconduct with the victim during the same time frame, including manual-genital stimulation, and oral sex. Drennon

asserts that this other evidence only served to wrongly establish that he had a propensity to sexually mistreat his daughter and violated I.R.E. 404(b).

To properly examine this issue, we abide by the following criteria:

Generally, evidence of other crimes, wrongs or acts is inadmissible to show a defendant's criminal propensity or guilt of the crime charged. I.R.E. 404(b); *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680 (1991), *cert. denied*, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992), *overruled on other grounds by State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991); *State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979). However, such evidence may be admitted if offered for some purpose, other than propensity, relevant to a material issue in the case, such as the defendant's knowledge, identity, plan, preparation, opportunity, motive, intent and the absence of mistake or accident. *See* I.R.E. 404(b); *Pizzuto*, 119 Idaho at 750–51, 810 P.2d at 688–89. Though relevant, the evidence still may be excluded if the trial court concludes that the threat of unfair prejudice substantially outweighs its probative value. I.R.E. 403; *Pizzuto*, 119 Idaho at 750–51, 810 P.2d at 688–89. Thus, in order to admit evidence of other crimes, wrongs or acts, the trial court must first determine that the evidence is relevant to a material issue, other than propensity. If the evidence is deemed relevant, the court must, in the exercise of its discretion, determine whether the probative value of the evidence is substantially outweighed by the danger of causing unfair prejudice to the defendant. I.R.E. 403; *State v. Moore*, 120 Idaho 743, 819 P.2d 1143 (1991); *Pizzuto*, 119 Idaho at 750–51, 810 P.2d at 688–89.

Whether evidence is relevant presents an issue of law. *See* I.R.E. 401 *and* 402; *State v. Raudebaugh*, 124 Idaho 758, 864 P.2d 596 (1993); *State v. Maylett*, 108 Idaho 671, 674, 701 P.2d 291, 294 (Ct.App. 1985) (Burnett, J., concurring). Thus, in considering a trial court's decision to admit evidence of [other] misconduct, the appellate court exercises free review of the trial

judge's determination that the evidence was admissible under I.R.E. 404(b).

However, the lower court's conclusion that the probative value of the evidence is not outweighed by its unfair prejudice—the second part of the analysis under I.R.E. 403—is reviewed under an abuse of discretion standard. *State v. Rhoades,* 119 Idaho 594, 809 P.2d 455 (1991); *State v. Medrano,* 123 Idaho 114, 844 P.2d 1364 (Ct. App.1992). Under that standard, the appellate court inquires (1) whether the district court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 768 P.2d 1331 (1989).

*State v. Matthews,* 124 Idaho 806, 809, 864 P.2d 644, 647 (Ct.App.1993).

During direct examination of the victim, the prosecutor inquired about other sexual encounters with Drennon. Drennon objected, and the prosecutor responded that the evidence was admissible as proof of a common scheme or plan, intent and corroboration. The district court sustained Drennon's objection, but informed counsel that if the victim's credibility was attacked then evidence of uncharged sexual acts might be admissible for "other purposes," as that phrase is used in I.R.E. 404(b), such as to allow the State to "rehabilitate an attacked or impeached witness."

Drennon's defense was that the sexual act never occurred. His cross-examination of the victim challenged her credibility and sought to show that she was fabricating the story. He did this by attempting to establish: that because his house contained eight children and three adults, with no locks on the bedroom door, he was never alone with the victim and never had the opportunity to perform the act; that the victim made up the story because she was mad over discussions about a bicycle; that she made up the story because after Drennon suffered a stroke, he required extra attention from her mother—attention which the victim allegedly desired

for herself; and that the victim had a basis for fabricating the story because she had seen sexually explicit magazines in the home and had "walked-in" on her parents while they were intimately engaged.

On redirect examination, the State attempted to elicit from the victim testimony regarding other incidents of sexual misconduct. This time, the district court overruled Drennon's objections. The court determined that evidence of uncharged sexual misconduct was relevant to noncharacter issues and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Therefore, the evidence was admissible. Before allowing the evidence to be introduced, however, the district court gave the jury a cautionary instruction stating that the evidence could not be considered to prove that the Drennon was a person of bad character or that he had a disposition to commit crimes, but only "for the limited purpose of determining if it tends to show the credibility of this witness."

We conclude that the district court did not err when it allowed the victim to testify about the uncharged acts. The transcript readily shows that during its consideration of the issue, the district court relied on and thoroughly discussed pertinent rules of evidence and Idaho case law, and recognized issues of law and discretion. Drennon opened the door for the evidence by putting at issue at least one enumerated element of I.R.E. 404(b). He alleged that he never had the opportunity to commit the act because he was never alone with the victim. The victim's testimony that he was alone with her on many occasions—and performed other acts—was properly admitted to refute his allegation. *See State v. Phillips,* 123 Idaho 178, 181, 845 P.2d 1211, 1214 (1993); *State v. Moore,* 120 Idaho 743, 745–47, 819 P.2d 1143, 1145–47 (1992).

#### 4. Intercourse

█ Drennon also argues that when the victim testified concerning the alleged act she described intercourse, which does not comport with the charge that Drennon committed an essentially "external" act by rubbing his penis against her legs. Later at

trial, several physicians testified regarding the lack of evidence of penetration, primarily to establish that physical evidence of lewd conduct is not always evident. Drennon did not object to the victim's testimony or the physicians' statements regarding the lack of physical evidence of penetration. Admitting this testimony was not fundamental error and it did not survive the lack of objection. The issue, then has not been properly preserved for appeal. I.R.E. 103(a)(1); *State v. Higgins*, 122 Idaho 590, 596, 836 P.2d 536, 542 (1992). Moreover, the testimony provided by the physicians was not offered to show that intercourse occurred, but to challenge Drennon's assertion that the lack of evidence of sexual penetration showed that absolutely no sexual contact occurred. The testimony was relevant and admissible.

### 5. Jury Instructions

 Next, Drennon argues that the district court erred when it refused to instruct the jury on lesser offenses included in lewd and lascivious conduct, primarily sexual abuse of a child under the age of sixteen, I.C. § 18–1506, and battery, I.C. § 18–903. The Idaho Code states that the trial court shall instruct the jury with respect to lesser included offenses provided that: (1) either party requests such an instruction; *and* (2) there is a reasonable view of the evidence presented in the case that would support a finding that the defendant committed such lesser included offense but did not commit the greater offense. I.C. § 19–2132; *State v. Croasdale*, 120 Idaho 18, 19, 813 P.2d 357, 358 (Ct.App.1991).[1] A lesser included offense is one which is necessarily committed while committing the crime charged, or the essential elements of which are alleged as the manner or means by which the charged offense has been committed. *Id.* When deciding whether an offense is necessarily included in the charged offense, the trial court must consider whether the facts alleged in

the pleading instrument and the evidence adduced at trial shows that the included offense occurred during commission of the charged offense. *Id.* Whether a crime is a lesser included offense of the crime charged is a question of law over which an appellate court exercises free review. *Id.*

It is impossible to tell from the record if Drennon requested instructions on lesser included offenses. Apparently, a discussion was held off-record in the judge's chambers. The transcript indicates that Drennon's counsel stated that in chambers he had "inquired about lesser included offenses that would go all the way from battery to sexual contact with a child under 16." He then stated that he understood that "the Court will not instruct on the lesser included." After this comment, the district court discussed why it was not instructing the jury on lesser included offenses. Giving Drennon the benefit of the doubt, we construe counsel's statement as an indication that he had requested the instructions.

Idaho Code § 18–1508 provides that a person who commits any lewd or lascivious act upon a child under the age of sixteen years, "including but not limited to" genital-genital contact, oral-genital contact, anal-genital contact, oral-anal contact, manual-anal contact, or manual-genital contact, with the intent of arousing, appealing to, or gratifying his or her own sexual desires or those of the child, shall be guilty of a felony and can be sentenced to up to life in prison. Idaho Code § 18–1506 provides that the crime of sexual abuse of a child under sixteen years of age occurs when an adult has "sexual contact with such a child, not amounting to lewd conduct as defined in section 18–1508, Idaho Code...." "Sexual contact" is defined to mean any physical contact between the child and the actor "which is intended to gratify the lust or sexual desire of the actor...."

---

1. For the sake of clarity, we note that in *State v. Tribe*, 123 Idaho 721, 852 P.2d 87 (1993), the Idaho Supreme Court applied I.C. § 19–2132 and stated that it was the duty of the trial court to instruct the jury on lesser included offenses when the offenses are supported by any reasonable view of the evidence, even when the parties do not request such instructions. *Tribe*, 123 Idaho at 726, 852 P.2d at 92. *Tribe* addressed an earlier version of the statute. When I.C. § 19–2132 was amended in 1988—the version we apply in this case—the legislature included a provision that either party must request the instruction. *See* I.C. § 19–2132(b); *Tribe*, 123 Idaho at 726 n. 7, 852 P.2d at 92 n. 7.

I.C. § 18–1506(3). Punishment must not exceed fifteen years imprisonment.

Several years ago, the Idaho Supreme Court stated that the offense of sexual abuse of a child is included in a charge of lewd conduct with a child. *State v. O'Neill,* 118 Idaho 244, 250, 796 P.2d 121, 127 (1990). However, this may not "necessarily" be so in every case. *State v. Colwell,* 124 Idaho 560, 565, 861 P.2d 1225, 1230 (Ct.App.1993). It is "the facts alleged rather than the designation of the offense," that control. *O'Neill,* 118 Idaho at 249, 796 P.2d at 128; *Colwell,* 124 Idaho at 565 n. 4, 861 P.2d at 1230 n. 4. The decision in *O'Neill* did not articulate the facts alleged in that case. More recently, the Supreme Court decided *State v. Fodge,* 121 Idaho 192, 824 P.2d 123 (1992), which did articulate the facts alleged and reached the opposite conclusion from *O'Neill.* In *Fodge* the defendant was charged with lewd conduct, specifically oral-genital and anal-genital contact, and "there was no testimony regarding any other type of touching." The defendant requested instructions for lesser included offenses of sexual abuse of a child under the age of sixteen, injury to children with the potential of great bodily harm, injury to children without the potential of great bodily harm, and battery. The trial court refused to give the instructions. The Supreme Court stated that "the trial court was correct in ruling that the evidence did not support the proposed instructions" because the only testimony at trial went to specific acts of oral-genital and anal-genital contact, and "I.C. § 18–1508 specifically lists these contacts as lewd and lascivious acts." *Fodge,* 121 Idaho at 195, 824 P.2d at 126. The Supreme Court concluded that if the evidence described only an enumerated act of lewd conduct, there was no reasonable view of the evidence to support the four proposed instructions.

The instant case falls squarely within the parameters set by *Fodge.* Therefore, we reach the same conclusion: the district court correctly ruled that the evidence did not support the proposed instructions. Here, the charging instrument alleged that Drennon rubbed his penis between the victim's legs near her vagina and ejaculated. The victim testified that Drennon "took his middle [penis] and put it inside me in—in my baby hole." Drennon claimed that the alleged act never occurred. The district court stated that it had examined possible lesser included offenses applicable to the charge, that is, sexual abuse of a child under the age of sixteen, injury to children with the potential of great bodily harm, injury to children without the potential of great bodily harm, and battery. The district court declined to instruct the jury on these other charges, because evidence of only one act—as described by the victim—was introduced. The court determined that if the victim's testimony was believed, the only conclusion a reasonably prudent person could reach was that Drennon's alleged activity constituted an enumerated lewd act. On appeal, however, Drennon argues that evidence of other acts was introduced when the victim testified regarding other uncharged sexual contacts. Addressing the entire issue, the district court stated:

> [T]he only way the Court allowed any other type of offense to come in here—I specifically limited them to credibility of [the victim]. And if I were to allow lesser included offenses, then the jury could consider those other acts that were talked about by Mr. Drennon, [Detective] Tim Randall, and [the victim]. They could consider any of those other acts in finding the elements of a lesser included offense. And the Court does not want to do that. The the [sic] Court does not want to confuse or mislead the jury or take in any way from Mr. Drennon's fair trial. And in this case his defense has always been these acts did not happen. So the only way for me to be sure he receives his fair trial in this case with the facts that I have before me is to make the State either prove beyond a reasonable doubt the facts did happen, the act did happen with him placing his penis between her legs and ejaculating, or it did not.
>
> . . . .
>
> [A] [r]easonable view of the evidence presented would not support that the defendant might have committed a lesser included offense but did not commit a greater offense.

Here, the charging instrument could be interpreted to allege both sexual abuse and lewd conduct.[2] The act of rubbing a penis between the legs · of the victim *near* her vagina and ejaculating, instead of actually touching the vagina, is sexual contact between the actor and the child with the intent to gratify the actor's sexual desire. It is not one of the enumerated acts of lewd conduct. Therefore, it could comprise an act of sexual abuse as defined in I.C. § 18–1506. However, that statute also states that sexual abuse only occurs when the sexual act does not amount to lewd conduct. Unfortunately, I.C. § 18–1506 and § 18–1508 are poorly written and appear to prohibit overlapping kinds of conduct. Sexual contact that amounts to sexual abuse can conceivably fall into the nebulous category of acts which, under I.C. § 18–1508, include but are not limited to the enumerated acts of lewd conduct.

Vital to our review, however, are the facts of the case. The only evidence introduced to establish that the charged crime occurred was provided by the victim. She described a singular act of genital-genital contact which I.C. § 18–1508 enumerates as lewd conduct. Drennon, testifying in his defense, did not describe any other type of act, but denied that any sexual touching had occurred. As in *Fodge*, the issue presented at trial was whether lewd conduct occurred or whether it did not. Drennon was not charged with any other type of conduct and no other conduct was offered to establish that he committed the charged act. Therefore, the district court correctly refused to instruct the jury on the lesser offenses.

#### 6. Sentence

■ Drennon also asserts that he received an excessive sentence. Initially, he received a sentence of eighteen years to life. He filed an I.C.R. 35 motion requesting leniency. The district court partially granted the motion by reducing the determinate portion of the sentence to four years. Drennon's current sentence of four years to life is the sentence presented for our consideration

on appeal. He argues that he deserves probation and that his reduced sentence remains too long.

■ Drennon filed a direct appeal from his judgment of conviction, and he also appealed from the order partially granting his Rule 35 motion.[3] The criteria for examining a decision made upon a request for leniency under Rule 35 are the same as those applied in determining whether the original sentence was reasonable. *State v. Schorzman*, 122 Idaho 201, 203, 832 P.2d 1136, 1138 (Ct.App.1992). We apply an abuse of discretion standard when examining the probable duration of confinement in light of the nature of the crime, the character of the offender, and the objectives of sentencing, which are the protection of society, deterrence, rehabilitation, and retribution. *See Matthews*, 124 Idaho at 815, 864 P.2d at 653; *State v. Young*, 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991). If the sentence was reasonable and not excessive when pronounced, the defendant must show that it is excessive in view of new or additional information presented with his Rule 35 motion. *State v. Hernandez*, 121 Idaho 114, 822 P.2d 1011 (Ct.App.1991). If he fails to make this showing, we cannot say that the sentence or the denial of the motion represents an abuse of discretion. *Id.* 121 Idaho at 117, 822 P.2d at 1014.

■ Drennon's unified sentence of four years to life is within the range provided by statute. I.C. § 18–1508. Drennon, therefore, has the burden of showing that the sentence is unreasonable in light of his individual circumstances. *See State v. Broadhead*, 120 Idaho 141, 144–45, 814 P.2d 401, 404–05 (1991), *overruled on other grounds*, *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992); *Matthews*, 124 Idaho at 815, 864 P.2d at 653. His argument that the sentence is excessive focuses on the indeterminate life term. Because Drennon was sentenced under the Unified Sentencing Act, however, we consider his determinate or minimum term of

---

**2.** We note that Drennon has not challenged the sufficiency of the indictment to charge the act of lewd conduct.

**3.** The two appeals were consolidated for disposition in this proceeding, by order of the Supreme Court.

four years to be the probable term of confinement. *State v. Puente–Gomez,* 121 Idaho 702, 707, 827 P.2d 715, 720 (Ct.App.1992). We are unable to speculate as to a possible longer term beyond the minimum because the Commission on Pardons and Parole is vested with the discretion to grant or deny parole at any time after completion of the fixed term. *Id.* Therefore, our review is limited to determining whether a four-year minimum period of confinement represents an abuse of discretion.

The seriousness of Drennon's offense is undisputed. He abused his position of trust in the family to gratify his own sexual desires, perhaps leaving his daughter with irreparable psychological scars. The character he exhibited to others, however, would not have suggested his criminal behavior. He had no recorded criminal history and appeared to be a loving and supportive husband and father. He was active in his church and was helpful to his friends. His sense of responsibility, however, did not extend to admitting his crime, at least at first. At trial and to his presentence investigator, he denied that the incident ever occurred. In order to evaluate Drennon's suitability for probation, the court retained jurisdiction for a total of 180 days while Drennon participated in the "rider" program at the North Idaho Correctional Institution (NICI).

Drennon did not fair well in the program. He appeared to make some progress in that, after being sentenced, he admitted he had fondled his daughter and rubbed his penis on her genitals numerous times. Apparently, his behavior at NICI was marked by dishonesty and attempts to manipulate the evaluation program and staff to his own advantage. In other words, he was "playing the game" in order to win probation. His psychological profile suggests someone who refuses to acknowledge the harm that he did except insofar as it reduces his punishment. Although he states he will not molest again "he is unwilling to do anything to insure that." The social worker who wrote the recommendation to relinquish jurisdiction summed up the staff's observations as follows:

> The majority had great concerns that he was not ready for probation. The psycho-

logical evaluation also saw him as a high risk to re-offend. Based on negative input from all sources the Committee recommends the court drop jurisdiction.

The district court agreed with the recommendation, which comported with its own perception of Drennon. Although the district court received many letters of support from Drennon's friends and family, the court felt bound by the fact that Drennon continued to minimize his conduct and its effect on his daughter and family, and he had failed to arrange adequate treatment had he been released on probation. This observation sums up the district court's perception of Drennon: that his acknowledgement of his actions, and his inquiries about treatment, were merely a last minute effort to avoid the consequences of his actions. Both at the initial sentencing and when ruling on the Rule 35 motion, the district court examined the appropriate sentencing goals. The court ultimately focused on the goals of protecting society and retribution. There was no abuse of discretion in the reduced sentence imposed.

### 7. Cumulative Errors

Drennon also asserts that cumulative errors deprived him of a fair trial. However, he fails to identify the "accumulated" errors of which he complains. We hold that this generalized challenge is without merit. I.A.R. 35(a)(4); 35(a)(6).

### 8. Hearing on Retained Jurisdiction

Finally, Drennon contends that the hearing held at NICI to determine if the district court should relinquish retained jurisdiction violated his right to due process. He asserted several errors in his appellate brief, chief among them being that he was given an inadequate time to prepare because he was given only twenty-four hours notice of the hearing.

Drennon's allegations are moot. He filed an application for post-conviction relief, to which the district court responded on November 30, 1993, after the briefs were filed in this direct appeal. In its decision, the district court determined, among other things, that the notice of hearing was inadequate and that Drennon was "not afforded the

hearing procedure that [he] might reasonably expect under the guarantees of due process of law." The court ordered that Drennon be re-evaluated to determine if jurisdiction should be relinquished. Drennon received the relief in his post-conviction proceeding that he now seeks on direct appeal. There is no need to discuss these issues further.

## CONCLUSION

There was no prosecutorial misconduct sufficient to deny Drennon a fair trial. The district court did not err when it allowed the state to present evidence of uncharged sexual misconduct with the victim. Jury instructions on lesser offenses included in lewd and lascivious conduct were not appropriate. Drennon's reduced sentence of four years to life is within the range allowed by statute and does not represent an abuse of discretion. His allegations that he did not receive a meaningful post-trial hearing about his participation in the retained jurisdiction program and his suitability for probation were rendered moot because of the remedy granted on his application for post-conviction relief. There are no cumulative errors to warrant disturbing the proceedings held before the lower court.

For the foregoing reasons, the judgment of conviction, and the order partially granting Drennon's motion to reduce his sentence, are affirmed.

LANSING and PERRY, JJ., concur.