816 P.2d 1002

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Terry Dean REYNOLDS,
Defendant–Appellant.**

No. 18682.

Court of Appeals of Idaho.

Aug. 2, 1991.

Petition for Review Denied Oct. 3, 1991.

M. Lynn Dunlap, Twin Falls, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Jack B. Haycock (argued), Deputy Atty. Gen., for plaintiff-respondent.

WALTERS, Chief Judge.

A Twin Falls jury found Terry Dean Reynolds guilty of lewd conduct with a twelve-year old girl. On appeal, Reynolds challenges the judgment of conviction on the grounds that the prosecuting attorney's comments during opening statement and closing argument constituted misconduct, depriving Reynolds of his right to a fair trial. For the reasons stated below, we affirm.

### FACTS

In May, 1989, the Twin Falls Prosecuting Attorney filed a criminal complaint charging Reynolds with the crime of lewd conduct with a minor under the age of sixteen, I.C. § 18–1508. Reynolds entered a plea of not guilty and requested a jury trial. On the morning of trial, the prosecutor moved in limine seeking a court order to preclude the defense from eliciting or producing any evidence of prior sexual conduct of the alleged victim (hereinafter referred to as KB). This motion apparently was precipitated by the defense counsel's earlier reference to purported rumors that KB was a "boy crazy" adolescent, and that throughout the year and one-half preceding the alleged crime, she had monthly fears of being pregnant. The district court granted the motion and issued an order barring the defense from eliciting such evidence. The parties proceeded with the trial.

The trial record discloses that Reynolds had been an invited guest at the home of KB and her mother and had stayed the night. According to KB's testimony, Reynolds sexually molested her early the following morning, while the rest of the household slept. The state also presented testimony from Reynolds' former acquaintances who claimed that Reynolds had admitted to the molestation. Reynolds took the stand and denied these accusations. He further testified that, at the time the incident reportedly took place, he was not in the house but had left to drive to work. No forensic evidence of the crime was produced at trial. Although several witnesses testified as to the whereabouts of Reynolds or KB during the hours preceding the alleged molestation, there were no eye-witnesses to corroborate the morning's event as related by either KB or Reynolds. Accordingly, the ultimate issue of guilt centered on the credibility of KB and Reynolds and the veracity of their conflicting stories. Counsel devoted their respective closing arguments to rigorously analyzing the logic and credibility of the opposing testimony.

In her rebuttal argument, the prosecuting attorney stated to the jury that Reynolds had "murdered [KB's] innocence, robbed her of her childhood and destroyed her of her [sic] ability to ever be safe." The prosecutor then concluded with the following quotation from John Donne's "The Sermon on the Bells:"

> No man is an island, entire of itself; every man is a piece of continent, a part of the main; if a clod be washed away by the sea, Europe is the less, as well as if a promontory were, as well if a manor of thy friends or of thine own were; any man's death diminishes me, because I am involved in mankind; and therefore ask not for whom the bell tolls because it tolls for thee.

Following its deliberations, the jury returned a verdict finding Reynolds guilty as charged.

On appeal, Reynolds claims that the prosecutor took unfair advantage of the order in limine by misrepresenting KB's character to the jury. Further, he asserts that the prosecutor's concluding quotation was improperly suggestive of Reynolds' propensity to commit crimes against society in the future unless convicted, which resulted in the calculated effect of inflaming the passions of the jury against him.

## STANDARD OF REVIEW

■ We initially note that Reynolds did not object at trial to the conduct he now claims was erroneous. In the absence of a timely objection to an alleged error at trial, an appellate court generally will not consider the alleged error on appeal. *State v. LaMere*, 103 Idaho 839, 844, 655 P.2d 46, 51 (1982); *State v. Sharp*, 101 Idaho 498, 616 P.2d 1034 (1980). However, under certain circumstances the failure to object to closing arguments of a prosecuting attorney in a criminal case does not constitute a waiver of the objection. *See, e.g., Sharp*, 101 Idaho at 503, 616 P.2d at 1039 (prosecutor's use of inflammatory statements); *State v. Garcia*, 100 Idaho 108, 594 P.2d 146 (1979) (prosecutor's statement of personal belief or falsity of defendant's testimony). Moreover, where, as here, an alleged error is claimed to have deprived the defendant of his or her constitutional right to receive a fair trial, review is warranted under the "fundamental error" doctrine. *Garcia*, 100 Idaho at 110, 594 P.2d at 148; *State v. White*, 97 Idaho 708, 551 P.2d 1344, *cert. denied*, 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1976); *Smith v. State*, 94 Idaho 469, 491 P.2d 733 (1971).

Our inquiry, thus, is two-tiered. We first determine whether the prosecutorial conduct complained of was improper. If we conclude that it was, we then consider whether such misconduct prejudiced Reynolds' right to a fair trial, or whether it was harmless. *See State v. Hodges*, 105 Idaho

588, 671 P.2d 1051 (1983); *Garcia*, 100 Idaho 108, 594 P.2d 146.

## MISCONDUCT IN THE PRESENTATION OF THE STATE'S CASE

■ We begin with Reynolds' assertion that, in setting forth the state's case, the prosecutor unfairly exploited the court's exclusionary order precluding Reynolds from eliciting evidence of KB's prior sexual behavior. He cites as his first example the following opening remark by the prosecutor:

> Many of you may have or may not have preconceived notions about what thirteen-year old girls look like. You'll get to see her. You'll get to judge her for yourself [sic] what kind of a thirteen-year old girl she is.

Reynolds maintains that it was improper to suggest to the jurors that they could evaluate KB's credibility for themselves in view of the prosecutor's successful suppression of evidence which otherwise would have permitted the jury to make a more informed evaluation of KB's character and credibility. Specifically, Reynolds argues that, had rumors of KB's extensive sexual activity been disclosed to the jury, such evidence might have undermined the credibility of KB's testimony that she was "scared and crying" during the alleged molestation. We find this argument untenable and wholly lacking in merit. The prosecutor's statement was a request that the jurors disregard any generalized biases or prejudices that they may hold concerning young teen-aged girls and that they judge KB as presented. This is exactly what the law requires of every juror. Moreover, the law plainly prohibits the introduction of evidence concerning an alleged victim's past sexual behavior or reputation. *See* I.R.E. 412; I.R.E. 608.[1] We find no impropriety in these remarks by the prosecutor.

---

1. Evidence Rule 412(a) provides, in relevant part,

   Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sex crime, reputation or opinion evidence of the past sexual behavior of an

   alleged victim of such sex crime is not admissible.

   Evidence Rule 608, pertaining to character evidence, provides that such evidence is admissible only if it refers to the character of the witness for truthfulness or untruthfulness.

■ Additionally, Reynolds asserts that the prosecutor's reference to KB as a "frightened" girl who was "disoriented" and "didn't know what was going on" during the alleged molestation amounted to a misrepresentation of fact and an improper reference to excluded evidence concerning KB's prior sexual conduct. Read in context, however, it is obvious that the prosecutor used these phrases to describe KB's state of semi-consciousness and her inability to effectively respond to what was happening to her—having been awakened suddenly by Reynolds from a night's sleep. The remarks clearly were not attempts to comment on KB's lack of sexual knowledge and were not improper.

Finally, Reynolds avers that the state's entire case was presented in such a fashion as to make the jury believe that the victim was "totally innocent" of sexual matters, and therefore she could not have described the alleged sexual events unless they had actually occurred. Having fully reviewed the record of the trial proceedings, however, we find nothing to support Reynolds' claim that the state employed such a tactic. The alleged victim in this case was thirteen-years old at the time she testified. Her testimony further revealed to the jury that she was familiar with the terminology, albeit crude, that was used to describe the type of sexual conduct alleged. We again refer to the prosecutor's opening request that the jurors discard their preconceptions and render their decision solely upon the evidence. Thus, even if this jury had presumed teen-aged girls to be wholly ignorant of the terminology and physiology related to sexual conduct, such an idea in no way is attributable to the conduct of the prosecution here. In sum, we hold that

Reynolds has failed to demonstrate any prosecutorial misconduct occurring in the presentation of the state's case.

## MISCONDUCT DURING CLOSING ARGUMENT

We turn next to Reynolds' claim of prosecutorial misconduct occurring in the state's closing argument. Reynolds argues that the prosecutor made two statements resulting in the calculated effect of inflaming the passions of the jury against him. He further asserts that these remarks were prejudicial to his due process rights and require that his conviction be reversed.

■ Counsel for both sides traditionally have been afforded considerable latitude in their arguments and have the right to discuss fully the evidence and inferences and deductions arising therefrom. *LaMere*, 103 Idaho 839, 655 P.2d 46; *State v. Griffiths*, 101 Idaho 163, 610 P.2d 522 (1980), *overruled on other grounds, State v. LePage*, 102 Idaho 387, 630 P.2d 674, *cert. denied*, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981); *State v. Sistrunk*, 98 Idaho 629, 570 P.2d 866 (1977). The role of the public prosecutor is to present the government's case earnestly and vigorously, using every legitimate means to bring about a conviction, but also to see that justice is done and that every criminal defendant is accorded a fair trial. *State v. Robinson*, 115 Idaho 800, 807, 770 P.2d 809, 816 (Ct.App.1989); *State v. Danson*, 113 Idaho 746, 749, 747 P.2d 768, 771 (Ct. App.1987). Although we have recognized the imposition of certain well-accepted restrictions beyond which the prosecutor's argument may not go without running afoul of its function,[2] the propriety of a

---

**2.** Some of these principles have been codified by the American Bar Association. The standards generally pertinent to the issues in this case are as follows:

Standard 5.8. Argument to the Jury.
(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
. . . .

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.
ABA Standards, *The Prosecution Function* § 5 (1971). See *State v. Garcia*, 100 Idaho 108, 110,

given argument will depend largely on the facts of each case. The purpose of the prosecutor's closing argument, not unlike that of the defense in this regard, is to enlighten the jury and to help the jurors remember and interpret the evidence. Thus, the prosecutor may discuss the evidence, pointing out discrepancies and conflicts in the testimony, and argue that the evidence in the record supports and justifies a conviction. We note that counsel also may make remarks, not based on the record, which concern matters of general knowledge or experience. ABA Standard § 5.9. Thus, in making his or her concluding oration, the prosecuting attorney may resort to poetry, cite fiction, reference anecdotes or tell jokes. *See* J. STEIN, CLOSING ARGUMENT § 12, at 23 (1990). However, the prosecutor is not permitted to refer to the jurors or their families, hypothesizing the commission of the crime at issue against them. *See* Vess, *Walking a Tightrope: A Survey of Limitations on the Prosecutor's Closing Argument*, 64 J.CRIM.L. & CRIMINOLOGY 23, 50, note 234 (1973). Nor is it proper for the prosecutor to suggest that the defendant is likely to commit future crimes unless convicted. *State v. Baruth*, 107 Idaho 651, 691 P.2d 1266 (Ct.App.1984). *See also* ABA Standard § 5.8(e).

With these principles in mind, we turn to Reynolds' assertion of error concerning the propriety of the prosecutor's quotation from the poem by John Donne.[3] Reynolds directs our attention to the concluding phrase read to the jury: "ask not for whom the bell tolls because it tolls for thee." Reynolds submits that these words constituted an impassioned exhortation to the jury to convict him; a threat that Reynolds would repeat the offense against the jurors or their families if acquitted. Although we agree with Reynolds that the phrase may be construed as an appeal to the fears of the jury, this is not the only meaning, or even the most obvious meaning, to be derived from the quotation. The quotation might also be understood as a warning against the great danger and harm to the fabric of society if but one of its members is wronged. An additional interpretation, argued by the state on appeal, is that the passage constituted no more than a permissible "link-in-the-chain" argument. *See State v. Gibson*, 106 Idaho 54, 675 P.2d 33 (1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984). Given the ambiguity of the quoted phrase, we cannot conclude that it was manifestly intended to be, or of such a character that the jury would naturally and necessarily take it to be, an exhortation to convict Reynolds in order to safeguard the jurors' own families from Reynolds' future crimes.[4] Accordingly, we hold that any impropriety was not prejudicial to Reynolds, and therefore was harmless.

Next, we consider the prosecutor's statement that "Reynolds murdered [KB']s innocence." Reynolds contends that by declaring KB's prior "innocence" to the jury, the prosecutor misrepresented the facts concerning KB's sexual history, and that the unfairness of such remark was exacerbated by the existence of the court order

---

594 P.2d 146, 148 (1979), in which the Idaho Supreme Court set forth the standards as originally drafted. Although the ABA Standards have since been revised, *see*, 1 ABA Standards for Criminal Justice (2d ed. 1986 Supp.), the standards employed in this opinion have remained unchanged.

**3.** John Donne, a seventeenth century writer and cleric, is regarded as the greatest of the writers of metaphysical poetry, in which passion is interwoven with reasoning. His poems are noted as intense and "often riddling." *See* H. GRIERSON, THE BACKGROUND OF ENGLISH LITERATURE, at 105 (1925); THE CAMBRIDGE GUIDE TO LITERATURE IN ENGLISH (I. Ousby, ed. 1988).

**4.** *Cf. United States v. Tierney*, 424 F.2d 643 (9th Cir.), *cert. denied*, 400 U.S. 850, 91 S.Ct. 53, 27 L.Ed.2d 87 (1970) (when determining whether prosecutor's statement constituted an improper comment on the defendant's refusal to testify, the appellate court asks, "was the language used by the prosecutor manifestly intended to be, or of such a character that the jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify?"); *United States v. Chaney*, 446 F.2d 571 (3rd Cir.), *cert. denied*, 404 U.S. 993, 92 S.Ct. 543, 30 L.Ed.2d 546 (1971); *United States v. White*, 444 F.2d 1274 (5th Cir.), *cert. denied*, 404 U.S. 949, 92 S.Ct. 300, 30 L.Ed.2d 266 (1971).

precluding the defense from eliciting contrary evidence during trial. The state asserts, responsively, that there occurred no misrepresentation of fact because, absent an offer of proof by the defense, there existed no evidence in the record, excluded or otherwise, to contradict the statement that KB was other than a chaste, "innocent" girl at the time of the alleged crime. However, we need not go so far as to determine whether the prosecutor's utterance constituted a misrepresentation of fact; we hold that, in either case, the prosecutor's remark went beyond the permissible bounds of proper argument.

First, the remark constituted a reference, albeit an indirect one, to KB's past sexual behavior. The law strictly proscribes the admission of such evidence. *See* I.R.E. 412. Moreover, having successfully urged the court for an order precluding the defense from eliciting contrary evidence, the prosecutor was not permitted to suggest in her argument that such evidence did not exist. *State v. Printz*, 115 Idaho 566, 768 P.2d 829 (Ct.App.1989); *State v. McNeely*, 104 Idaho 849, 664 P.2d 277 (Ct.App.1983). Furthermore, although we acknowledge that a crime involving outrageous conduct may warrant stronger words against the accused than might otherwise be justified, *see, STEIN, supra,* §§ 12 and 26, the prior chastity of an alleged victim is wholly irrelevant to whether the accused committed the offense charged. The only purpose of the remark, if expounded upon by the prosecution, would have been to fuel the jury's passion against Reynolds, without throwing any light on the question for decision. Accordingly, we hold the prosecutor's conduct in uttering this remark constituted misconduct.

Our conclusion, however, that the prosecutor's statement constituted misconduct does not end our inquiry. Although the prosecutor acted improperly, Reynolds is not necessarily entitled to a new trial. The right to due process does not guarantee a defendant an error-free trial, but a fair one. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Similarly, the function of appellate review is not to discipline the prosecutor for misconduct, but to insure that any such misconduct did not interfere with the defendant's right to a fair trial. *See State v. Ruth*, 102 Idaho 638, 637 P.2d 415 (1981); *Griffiths*, 101 Idaho 163, 610 P.2d 522. *See also* Alschuler, *Courtroom Misconduct by Prosecutors and Trial Judges*, 50 TEX. L.REV. 629, 644–55 (1972). Prosecutorial misconduct reaches the level of a federal constitutional violation only if the argument "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). However, where the appellate court is able to declare that, beyond a reasonable doubt, the jury below would have reached the same result had the misconduct not occurred, the error is deemed harmless. I.C.R. 52; *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *LePage*, 102 Idaho at 393, 630 P.2d at 681.[5]

Our review of the record convinces us that no reversible error occurred in this case. Although the issue of Reynolds' guilt was fairly debatable, we conclude that the prosecutor's misconduct related solely to an inconsequential fact and therefore was not influential upon the jury. *See State v. McCoy*, 100 Idaho 753, 759, 605 P.2d 517, 523 (1980). Given the state's allegation that Reynolds sexually molested a child, we cannot say that the prosecutor's characterization of that crime as having murdered its victim's innocence was inflammatory or that it stirred the jury to any degree of passion beyond that already created by the state's accusation.[6] Rather, the impropriety of the remark stems from

5. The purpose of the harmless error doctrine is "to block setting aside convictions for small errors or defects that have little if any, likelihood of having changed the results of the trial." *Chapman*, 386 U.S. at 22, 87 S.Ct. at 827 (quoted in *Garcia*, 100 Idaho at 111, 594 P.2d at 149).

6. A different result possibly might obtain if the victim of a sex crime were an adult woman whom the prosecutor characterized as innocent.

the prosecutor's use of a factual inference from excluded evidence. *See LaMere*, 103 Idaho at 844–55, 655 P.2d at 51–52. As discussed above, KB's sexual history was irrelevant and immaterial in this case. We are convinced beyond a reasonable doubt that there is no reasonable possibility that the prosecutor's misconduct materially contributed to Reynolds' conviction. Accordingly, we find the prosecutorial misconduct in this case to have been harmless.

The judgment of conviction is affirmed.

SWANSTROM and SILAK, JJ., concur.