882 P.2d 466

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jeffrey Herbert THOMAS, Defendant–Appellant.**

**No. 20895.**

Court of Appeals of Idaho.

Sept. 26, 1994.

Review Denied Jan. 31, 1995.

Swenson & Scoggin, Gooding, for appellant.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

Jeffrey H. Thomas was found guilty by a jury of second degree murder. I.C. §§ 18–4001; 18–4003(g). Thomas made a motion for new trial, which was denied. Judgment of conviction was entered and Thomas was sentenced to the custody of the Board of Correction for an indeterminate life term, with eighteen years specified as the minimum period of confinement. On appeal, Thomas raises two issues. First, he contends that the district court erred by denying the motion for new trial. Second, he argues that the district court abused its sentencing discretion. We affirm.

## BACKGROUND FACTS

Thomas was charged with first degree murder for shooting Sacramento Aguilar to death. The jury found Thomas guilty of second degree murder. The evidence presented to the jury may be summarized as follows.

In the early morning hours of August 31, 1992, Thomas and his younger brother Rod were returning to their home after a night of drinking. Rod was driving. They saw a car stopped on the side of the road; the car apparently had run over a mailbox. According to the testimony of both Rod and Thomas, they traveled some distance up the road before Thomas asked his brother to go back to the stopped car. When they arrived at the car, Thomas spoke with the driver, Sacramento Aguilar. Mr. Aguilar was very intoxicated. His blood alcohol content was later found to have been .282 percent.

While Thomas was talking to Aguilar, Thomas' youngest brother, Jeremy, arrived on the scene driving another vehicle. Jeremy told Rod "that he had called the cops on this guy [Aguilar] and ... the cops were coming," and that they should "get out of here." Rod and Thomas drove down the road again; then, at Thomas' insistence, they

returned to Aguilar's car. When they reached the scene, Thomas got out and walked over to Aguilar, who was seated in the driver's position. Rod said that Aguilar was simply rocking forward and back. He did not remember any other movements. Thomas pulled out a pistol and shot Aguilar. Rod heard six or seven shots. Rod and Thomas left the scene at once and went home.

A Jerome County deputy sheriff who had been dispatched to the area following Jeremy's call to the police, found Aguilar shortly afterward. Efforts to revive Aguilar were not successful. An autopsy showed that Aguilar had been shot three times, once in the shoulder and twice in the chest. One of the bullets had passed directly through his heart. An examination of Aguilar's shirt revealed the presence of lead residue, indicating that the shots to Aguilar's chest had been fired from a distance of no more than two feet.

Officers searched the scene and Aguilar's car. On the ground near the car they found four shell casings and three unfired cartridges. The unfired cartridges bore firing pin impressions. In the car they found a slug on the floor on the driver's side and another slug in the armrest. No weapons were found in the car.

The gun used by Thomas was a .380 semi-iautomatic. This model holds a maximum of seven shots, six in the clip and one in the chamber. Normally, when a shot is fired, the shell is ejected and the next cartridge comes into the chamber. But when there is a misfire, the shooter must manually pull back the slide to eject the misfired cartridge before the gun can be fired again.

In his testimony at trial, Thomas admitted that he fired seven times at Aguilar, striking him three times. He also admitted that he pulled the slide back to eject each of the three misfires. Thomas, however, claimed that he shot Aguilar in self-defense. He said that when he returned to Aguilar's car the second time, he asked Aguilar if he needed some help. He claimed that Aguilar said no, then said "[I]f you don't get out of here, I'll kill you." Thomas testified that Aguilar then began to reach toward the jockey box or the floorboard. This, he claimed, was when he pulled out his gun and started shooting Aguilar.

One of the witnesses for the state was Timothy Fultz, who had shared a cell with Thomas while awaiting sentencing on a burglary charge. Mr. Fultz said that Thomas told him "that he shot this Mexican guy on a bet." The bet had been made with "some friends of his down in Twin Falls." According to Mr. Fultz, Thomas further stated:

> that he did the world a favor because it is one less Mexican. He made a comment that there should be a law made up that we should be able to shoot a Mexican on sight while they are here in the U.S. and they should all be sent back down to Mexico, also.

After the jury found Thomas guilty of the lesser included offense of second degree murder, Thomas filed a motion for new trial based upon comments made by the prosecuting attorney during closing argument concerning conversations the prosecutor had previously with Mr. Fultz. The district court denied the motion following a hearing. The court sentenced Thomas to an indeterminate life term with a minimum period of confinement of eighteen years. This appeal followed.

## MOTION FOR NEW TRIAL

Idaho Criminal Rule 34 provides that the trial court, on motion of a defendant, may grant a new trial "if required in the interest of justice." Our Supreme Court has often stated that the question of whether the interest of justice requires a new trial under the circumstances of a particular case is directed to the sound discretion of the trial court; and the trial court's decision thereon will not be disturbed in the absence of an abuse of that discretion. *See, e.g., State v. Lankford,* 116 Idaho 860, 781 P.2d 197 (1989), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990); *State v. Scroggins,* 110 Idaho 380, 384, 716 P.2d 1152, 1156, *cert. denied,* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986); *State v. Olin,* 103 Idaho 391, 399, 648 P.2d 203, 211 (1982); *State v. Powers,* 100 Idaho 290, 596 P.2d 802 (1979); *State v.*

*McConville,* 82 Idaho 47, 349 P.2d 114 (1960); *State v. Fox,* 52 Idaho 474, 16 P.2d 663 (1932); *State v. Morrison,* 52 Idaho 99, 11 P.2d 619 (1932); *State v. Fleming,* 17 Idaho 471, 106 P. 305 (1910). However, a close reading of these cases shows that the court actually reviewed the alleged errors to determine if the particular error was harmless or whether it affected the outcome of the trial. This approach is similar to that applied on review of the denial of a motion for mistrial. *See, e.g., State v. Hedger,* 115 Idaho 598, 768 P.2d 1331 (1989). This Court followed the harmless error analysis in determining whether alleged prosecutorial misconduct occurred during argument to a jury in *State v. Reynolds,* 120 Idaho 445, 816 P.2d 1002 (Ct. App.1991); although in *Reynolds,* the issue was raised as a direct challenge to the judgment of conviction based on the jury's verdict rather than as an argument against the denial of either a motion for new trial or a motion for mistrial.

■ Here, the motion for new trial was likewise based upon alleged misconduct by the prosecutor in arguing the state's case to the jury. We think the same approach followed in *Reynolds* should be applied here. Accordingly, we will view this case from the perspective of whether the alleged misconduct interfered with the defendant's right to a fair trial. If we conclude that, beyond a reasonable doubt, the jury would have reached the same result had the misconduct not occurred, the error will be deemed harmless. *Reynolds,* 120 Idaho at 451, 816 P.2d at 1008.

However, before turning to the merits of this issue, we will address a threshold question raised by the state. As noted above, Thomas' motion was based upon alleged misconduct committed by the prosecutor during closing argument to the jury. In response to this issue, the state submits that the order denying Thomas' motion for a new trial should be upheld because prosecutorial misconduct during argument to a jury is not one of the grounds specified in I.C. § 19–2406 for relief. Although several years ago our Supreme Court held that motions for new trial are no longer limited to the statutory grounds in view of the applicable criminal

rule, *see State v. Drapeau,* 97 Idaho 685, 691 n. 4, 551 P.2d 972, 978 n. 4 (1976), the Court recently deviated from that stance, citing several cases that preceded the adoption by the Court of the criminal rule. In *State v. Gomez,* 126 Idaho 83, 878 P.2d 782 (1994), the Court upheld the district court's denial of a motion for new trial sought upon grounds of alleged ineffective assistance of counsel because that ground was not included in the statute. The Court said:

> Idaho Code § 19–2406 sets forth the only bases for the grant of a new trial. Ineffective assistance of counsel is not included in that list. Thus, as previously noted by this Court, while a decision of whether to grant a new trial is a discretionary matter for the trial judge, I.C. § 19–2406 limits the instances in which that discretion may be exercised. *State v. Lankford,* 116 Idaho 860, 873, 781 P.2d 197, 210 (1989), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990). Only those grounds provided statutorily can support the grant of a new trial. *State v. Laws,* 94 Idaho 200, 485 P.2d 144 (1971); *State v. Weise,* 75 Idaho 404, 273 P.2d 97 (1954); *State v. Davis,* 6 Idaho 159, 53 P. 678 (1898). Further, in *Lankford,* we held that "a trial judge does not abuse his or her discretion unless a new trial is granted for a reason that is not delineated in the code or unless the decision to grant or deny a new trial is manifestly contrary to the interests of justice." 116 Idaho at 873, 781 P.2d at 210.

126 Idaho at 86, 878 P.2d at 785.

Here the district court did not grant a new trial, so the question of the propriety of the court's decision on the motion is not impacted by the statutorily stated grounds. Rather, the question as couched by the Court's quote from *Lankford* is whether the district court's "decision to ... deny a new trial is manifestly contrary to the interests of justice." This observation is consistent with the provisions of I.C.R. 34, which permits the granting of a new trial if required in the interest of justice. Thus, in accord with *Lankford* and *Gomez,* we shall review the district court's decision not to grant Thomas' motion on the basis of whether the motion should have been granted in the interest of justice rather than upon ·

the failure of the motion to specify a ground recognized in the statute.

██ We thus turn to the underlying basis for the motion for new trial and a review of the district court's decision to deny that motion, considering the jury's determination that Thomas was guilty of second degree murder. It should be recalled that Mr. Fultz had testified before the jury that, while he shared a cell in the local jail with Thomas, Thomas told him he shot the victim on a bet, had done "the world a favor because it is one less Mexican" and made a comment that "we should be able to shoot a Mexican on sight while they are here in the U.S." During the prosecutor's closing argument, prosecutor referred to conversations between himself and Mr. Fultz. The prosecutor said that he had discussed with Mr. Fultz the possibility that Mr. Fultz would be called to testify. When Mr. Fultz indicated he was reluctant to "get involved," the prosecutor said he provided Mr. Fultz an option not to testify. He said he told Mr. Fultz that "If you don't want to testify, you tell me this isn't the truth. I do not put anyone on the stand that is not telling the truth. He could have said, nope, I won't. He could have left." At this point, Thomas' counsel objected on the ground that the prosecutor was "testifying" to matters not in the record. The court responded to this objection, stating to the jury: "The court will indicate that anything said by the attorneys that is not on the record is not evidence and you are to only consider the evidence in this case."

██ At the hearing on the motion for new trial, Thomas argued that the prosecutor's revelation about his conversations with Mr. Fultz was in essence a verification that Mr. Fultz had told the truth during his testimony. It is well-established that a prosecutor may not vouch for the truthfulness of a witness. However, the prosecutor may in argument express an opinion as to the truth or falsity of testimony when such opinion is based upon the evidence. *State v. Garcia,* 100 Idaho 108, 110 n. 1, 594 P.2d 146, 148 n. 1 (1979). Nonetheless, when such a comment is contemplated the prosecutor should exercise caution to avoid interjecting his personal belief and should explicitly state that the

opinion is based solely on inferences from evidence presented at trial. *Id.*

Upon concluding the hearing on Thomas' motion for new trial, the district court made several important observations. The court noted that it was limited to granting a new trial on the grounds listed in the statute. However, the court noted that the defendant also was entitled to a fair trial and that if the jury was influenced by the prosecutorial misconduct a new trial should be granted. The court noted that in his comments to the jury concerning his conversations with Mr. Fultz the prosecutor "basically was testifying as to facts not in the record," which was out of line. The court said:

> The only issue that the court is going to have to decide is whether or not this matter did influence the result or could have. I am not sure if it has to be proved, defense doesn't have to prove it did. I think the standard is likely.

> The court is not going to make a ruling today because the court wants to plug in these arguments and research the matter because this is much too important a case for me to just decide from the bench without thorough consideration.

Later, after having the matter under advisement, the district court determined that although the prosecutor's argument to the jury was improper because it was an "inartful" attempt to argue the evidence, the argument did not amount to the expression of an expert opinion by the prosecutor, but accurately reflected the testimony given by Mr. Fultz on redirect examination during the trial, and did not influence the result. The court ruled:

> The sole purpose of the Fultz testimony was to show the premeditation and deliberation necessary to a First Degree Murder conviction. If the jury had believed that [the] defendant shot the victim on a bet and because he hated Mexicans, the jury would have found [the] defendant guilty of First Degree Murder. Since the verdict was Second Degree Murder, it was obvious that the jury rejected Fultz's testimony; thus, making the prosecutor's remarks concerning Fultz clearly non-prejudicial.

The excellent job of cross-examination by defense counsel clearly showed Fultz to be an unbelievable witness.

The court's analysis comports with the standard which we have concluded should be applied in this case. Furthermore, our independent review of the record leads us to the conclusion that the court's decision was correct. In the circumstances of this case, and given the evidence presented, we hold that, beyond a reasonable doubt, the jury would have reached the verdict of guilty of second degree murder without influence by the prosecutor's misconduct. Accordingly, we hold that the alleged error was harmless and that the district court did not err in denying Thomas' motion for new trial.[1]

## SENTENCE REVIEW

■ Thomas' unified sentence is within the statutory maximum of life in prison permitted for second degree murder. I.C. § 18-4004. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). If the sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse if it is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

■ In reviewing a sentence imposed under the Unified Sentencing Act, I.C. § 19-2513, we treat the minimum period specified by the sentencing judge as the probable duration of confinement. *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989).

Thus, we view Thomas' actual term of confinement as eighteen years. Thomas must establish that under any reasonable view of the facts a period of confinement of eighteen years for his conviction for second degree murder was an abuse of discretion. This Court will not substitute its own view for that of the sentencing judge where reasonable minds might differ. *Toohill, supra.*

■ On review of a sentence, we conduct an independent examination of the record, focusing upon the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct. App.1982). The presentence report shows that this is Thomas' first felony conviction. He was 22 years old at the time he was sentenced in this case. His prior criminal record consists of traffic violations, disturbing the peace, procuring beer for minors and cruelty to animals. According to the presentence report, he has a serious problem with alcohol and use of marijuana but has never sought substance abuse treatment. The presentence investigator reported that although Thomas said he was very sorry for the victim's death, Thomas showed few outward signs of deep remorse. The report recommended that, because of the severity of the crime and for the protection of society, Thomas be placed in the physical custody of the Idaho State Correctional Institution.

During the sentencing proceeding, the district court expressed its recognition of the appropriate sentencing criteria. In his comments, the judge considered the fact that Thomas evidently was under the influence of a combination of alcohol and marijuana when he committed the murder and that there was "no real reason for this shooting other than the fact that [Thomas] was in a mean, mad mood because of [an] argument that occurred earlier in the evening." The court concluded that society needed protection from Thomas, which could be gained by the imposition of an indeterminate life sentence with the possibility for eventual release on parole, should

---

1. In its respondent's brief, the state discusses several other incidents where the prosecutor made statements that were objected to by the defense. We need not address these other incidents, because the defense's objections were sustained and the jury was properly admonished, and the appellant has not specifically asserted any error in this regard; the appellant elected to seek review only of the court's ruling on the grounds asserted in the motion for new trial.

Thomas rehabilitate himself. The court stated that "until that time, the court feels that there is an undue risk of his being dangerous, not to mention the fact that the seriousness of the facts of this offense calls for a heavy sentence." The court then imposed a life sentence with eighteen years required confinement before Thomas could be considered for parole.

It is clear in this case that the court appropriately considered the nature of the offense, the character of the offender, and the sentencing objectives in pronouncing the sentence. As our Supreme Court has noted, the seriousness of a homicide offense mandates a punishment in the form of a substantial prison sentence. *State v. Hooper*, 119 Idaho 606, 609, 809 P.2d 467, 470 (1991). A substantial sentence in this regard reflects society's condemnation of the defendant's conduct, deters other members of society from engaging in similar conduct, and protects society from future crime. *Id.* Upon reviewing the record, we cannot say the court below abused its discretion. We hold that the sentence imposed by the court was reasonable.

Accordingly, the order denying the motion for new trial and the judgment of conviction and sentence are affirmed.

LANSING and PERRY, JJ., concur.