**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36214**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Unpublished Opinion No. 701 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 5, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| RANDOLPH MARK SNOWBALL, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

Judgment of conviction for attempted intimidating a witness, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Randolph Mark Snowball appeals from his judgment of conviction for attempted intimidating a witness. Specifically, he asserts that the district court erred when it admitted testimony that a no-contact order had been entered in an underlying misdemeanor domestic battery case. He also asserts that the prosecutor engaged in misconduct during her closing argument. For the reasons set forth below, we affirm.

**I.**

**BACKGROUND**

In the underlying criminal case, Snowball was charged with misdemeanor domestic battery against his girlfriend, Whitnee Ward.[1] At his arraignment on that charge, a no-contact

---

[1]     Snowball and Ward are now married.

order was issued which prohibited him from contacting Ward in any manner. While Snowball was still incarcerated he wrote a letter addressed to Ward. The letter stated:

> Dear Whitnee,
>
> How are things going at home with you? I went to court on Wednesday and the prosecutor did not drop the charges. The prosecutor said he had spoken with you the night before and said that you said you couldn't come to court because you had school. Since you told the prosecutor that they reset the court date for October 31st @ 8:30 a.m. they are also putting out a subpoena for you to come testify at court. However, they MUST hand serve you with the subpoena. If they cannot hand serve you then the charges will get dropped. If they do hand serve you with a copy of that subpoena then you will have to come to court and testify or they will put a warrant out for your arrest. The best two options you have are to not answer thier [sic] calls so they cannot hand serve you, OR if they do hand serve you, come to court and testify to the fact that I didn't do anything. You will have to tell them that I did not assault you, and that you wrote that statement against me because you were angry. My public defender said you didn't want anything to do with me. I had to prove her wrong so I told her that you have been comming [sic] to visit me. I thought it was wierd [sic] you didn't come visit me this week so I thought I would write you this letter. If they force you to come to court I hope you do the right thing and tell them I didn't do anything, otherwise we will probably not be seeing each other anymore. I hope things go well and the charge is dropped. If so I hope you will still come to my sentencing date Nov. 1st 10 a.m. . . . .
>
> Love always,
> Mark Snowball

Snowball put the letter to Ward in with a fellow inmate's letter to his wife with instructions written across the top of the letter explaining how the inmate's wife could get the letter to Ward. However, Ward never received the letter. During a routine inspection of the outgoing mail, a jail deputy discovered the letter. As a result, the deputy did a check for no-contact orders on Snowball, and found the outstanding no-contact order. The deputy questioned Snowball, and Snowball admitted to writing the letter.

Snowball was charged with attempting to intimidate, impede, influence or prevent the attendance of a witness in violation of Idaho Code §§ 18-306, 18-2604. Before trial, the state filed two notices of intent to use Idaho Rule of Evidence 404(b) evidence in which it informed the court and Snowball that it would seek to introduce evidence of the domestic battery charge and the no-contact order. In response to the state's notices, Snowball filed a motion in limine seeking to exclude this evidence on the basis that it was irrelevant and overly prejudicial under I.R.E. 401 and 403. Snowball also sought to avoid the admission of this evidence by stipulating

2

that Ward "was a witness or person who might have been called as a witness in a misdemeanor criminal proceeding," as of the date of the letter. On the morning of trial, the district court began with a hearing on Snowball's motion in limine. The district court rejected Snowball's stipulation as incomplete, and held that the state could introduce a copy of the charging citation in the domestic battery and testimony on the existence of the no-contact order, but not the no-contact order itself. Ultimately, the jury found Snowball guilty of attempting to intimidate a witness. Thereafter, the district court entered a judgment and imposed a prison sentence. Snowball appeals his judgment of conviction arguing that the district court erred in admitting evidence of the no-contact order, and that the prosecutor engaged in misconduct during closing argument.

## II.

## ANALYSIS

### A. Rule 404(b) Evidence

Snowball asserts that the district court erred when it admitted evidence that a no-contact order had been entered in the underlying domestic battery case and was in place when Snowball wrote and attempted to send the letter to Ward. Snowball argues that the evidence of the no-contact order was wholly irrelevant to his charge of attempting to intimidate a witness. Alternatively, Snowball argues that even if it was marginally relevant, the danger of unfair prejudice substantially outweighed its low probative value.

Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b); *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct. App. 1987). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," so long as the prosecution provides notice that it intends to produce the evidence. I.R.E. 404(b). This Court freely reviews the question of relevancy as an issue of law. *State v. Hairston*, 133 Idaho 496, 501-02, 988 P.2d 1170, 1175-76 (1999). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. "Whether a fact is material is determined by its relationship to the legal theories presented by the parties." *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Under I.R.E. 403, relevant evidence may be excluded "if its probative value is

3

substantially outweighed by the danger of unfair prejudice." *State v. Page*, 135 Idaho 214, 219, 16 P.3d 890, 895 (2000). The trial court's I.R.E. 403 determination will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991). A defendant appealing from an objected-to, non-constitutionally-based error, as is the case here, will have the burden of showing that an error occurred. The state then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the error did not contribute to the jury's verdict, and was therefore harmless. *State v. Perry*, ___ Idaho ___, ___, ___ P.3d ___, ___ (July 23, 2010) (reh'g pending).[2]

Determining whether Snowball's violation of the no-contact order constituted evidence of other crimes, wrongs or acts under Rule 404(b) is not dispositive here. Rather, the critical analysis is whether violation of the no-contact order was relevant to the current charge of attempted intimidating a witness, and whether any prejudice ensued from its admittance.[3] The district court determined that Snowball's violation of the no-contact order was admissible stating:

> [T]hey [the state] need to bring that [evidence of the violation of the no-contact order] in so we have some context with which the jury can determine why a letter from you [Snowball] may be intimidating; when somebody else may receive the same letter, the same wording, it wouldn't be intimidating at all.
>
> . . . .

---

[2] When an alleged error is followed by a contemporaneous objection at trial, we employ the harmless error test articulated in *Chapman v. California*, 386 U.S. 18, 23-24 (1967). Under the *Chapman* harmless error analysis, where a constitutional violation occurs at trial, and is followed by a contemporaneous objection, a reversal is necessitated, *unless* the state proved "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24. In Idaho, the harmless error test established in *Chapman* is now applied to all objected-to error. *Perry*, ___ Idaho at ___, ___ P.3d at ___.

[3] Snowball does not challenge the admission of the evidence concerning the existence of the misdemeanor domestic battery case itself as he concedes that evidence was relevant to the question of whether Ward was a witness who was capable of being intimidated within the meaning of I.C. § 18-2604(3).

Idaho Code § 18-2604(3) provides in pertinent part that any person who, by any manner, willfully intimidates any person he believes may be called as a witness in a criminal proceeding from testifying freely is guilty of the felony of intimidating a witness. Evidence of the underlying domestic battery helps establish whether Ward was a witness who was capable of being intimidated within the meaning of I.C. § 18-2604(3).

4

There needs to be some proof, as I have already stated, that that letter would be referenced by a certain person as intimidating, not that it would be intimidating to just anybody.

The state posits that admitting evidence of Snowball's violation of the no-contact order was proper because it helped to establish the elements of the crime and explain the jail deputy's actions. The state relies on *State v. Yakovac*, 145 Idaho 437, 180 P.3d 476 (2008), claiming that it is directly on point. There, law enforcement officers responded to a call regarding a battery. They encountered Yakovac, the victim of the battery, who approached them by waving them down from a truck she was driving. The officers checked Yakovac's identity through dispatch and discovered that she had two outstanding warrants for her arrest. As a result, she was arrested. A search incident to the arrest revealed methamphetamine. At trial for her possession of methamphetamine charge, the prosecutor questioned the officers about the arrest and they mentioned the two outstanding warrants. Yakovac's attorney then questioned one of the officers about the warrants. After she was convicted, Yakovac appealed claiming that her counsel was ineffective for failing to object to testimony about the outstanding warrants. This Court concluded that evidence of Yakovac's outstanding warrants was not subject to exclusion under Rule 404(b) as such evidence was relevant to explain the officers' actions. That is, the arrest due to the outstanding warrants explained why the search incident to arrest (that led to the discovery of the methamphetamine) was conducted. *Id.* at 444-46, 448, 180 P.3d at 483-85, 487.

*Yakovac* is distinguishable from the instant case. Snowball did not approach the jail deputy; the jail deputy intercepted the letter from another inmate's outgoing mail. The jail deputy subsequently discovered the no-contact order. The existence of the no-contact order and its violation therefore became ancillary to the charge of attempted intimidating a witness. The fact that Snowball was not allowed to communicate with Ward at the time he wrote the letter is completely unrelated to the question of whether Snowball attempted to intimidate her. Lastly, using the evidence of the no-contact order to explain the jail deputy's actions is unnecessary. Whatever motivation the jail deputy had for investigating the existence or non-existence of a no-contact order was of no consequence because that information had no tendency to make the existence of any fact that is of consequence any more probable than it would be without the evidence.

Even if the existence of the no-contact order were marginally relevant, admitting it was highly prejudicial to Snowball because it emphasized his utter disregard and contempt for the law and the district court. In fact, the prosecutor stressed these points to the jury in closing argument. Any probative value the evidence may have had was minimal. Snowball's intent was really the only contestable issue here since he admitted to writing the letter. The content of the letter ultimately determined the purpose of the letter. Therefore, we conclude that evidence of the no-contact order is inadmissible under I.R.E. 401 and 403, and it was an abuse of discretion for the district court to allow it. However, even though Snowball met his initial burden of establishing that an error occurred, the state has also met its burden of demonstrating that the error was harmless. *See Perry*, ___ Idaho at ___, ___ P.3d at ___.

The state's primary evidence in the case was the letter Snowball wrote to Ward. Therein, Snowball focused on the underlying domestic battery charge and the fact that he was going to court for that charge. He goes on to first instruct Ward that she should not accept the subpoena or go to court, and then instructs her that if she does accept the subpoena that she should come to court and testify to the fact that he did not do anything to her. Snowball directs Ward specifically that she has to testify that Snowball did not assault her and that she wrote the statement against him because she was angry. Finally, Snowball informs Ward that they will probably not see each other anymore if she fails to testify as directed. Because his intent was clear from the letter, we conclude that the state established beyond a reasonable doubt that the admission of evidence regarding the no-contact order did not contribute to the jury's verdict.

**B.     Prosecutorial Misconduct**

Snowball also challenges unobjected-to statements made by the prosecutor during closing argument. The Idaho Supreme Court recently clarified the analysis that appellate courts must follow when a defendant alleges that an error occurred at trial, both in instances where there was a contemporaneous objection and instances where there was not. *See id.* at ___, ___ P.3d at ___. This analysis applies to all errors at trial, including prosecutorial misconduct. Idaho has limited appellate review of unobjected-to error to cases wherein the defendant has alleged the violation of a constitutionally protected right. *State v. Kirkwood*, 111 Idaho 623, 625-26, 726 P.2d 735, 737-38 (1986). Therefore, a trial error that does not violate one or more of the defendant's constitutionally protected rights is not subject to reversal under the fundamental error doctrine. *See State v. Anderson*, 144 Idaho 743, 749, 170 P.3d 886, 892 (2007).

6

"[I]t is a violation of a defendant's Fourteenth Amendment right to a fair trial for a prosecutor to attempt to have a jury reach its decision on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence." *Perry*, ___ Idaho at ___, ___ P.3d at ___. In cases where the alleged error was not followed by a contemporaneous objection, the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists; and (3) was not harmless. If the defendant persuades the appellate court that the alleged error satisfies this three-pronged inquiry, then the appellate court shall vacate and remand. *Id.* at ___, ___ P.3d at ___. For error to plainly exist it must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision. *Id*. at ___, ___ P.3d at ___. Under the harmless error test, the defendant bears the burden of proving beyond a reasonable doubt that the error did affect the outcome of the trial. *Id*.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. A fair trial is not necessarily a perfect trial. The role of the prosecutor is to present the government's case earnestly and vigorously, using every legitimate means to bring about a conviction, but also to see that justice is done and that every criminal defendant is accorded a fair trail. *State v. Babb*, 125 Idaho 934, 942, 877 P.2d 905, 913 (1994); *State v. Givens*, 28 Idaho 253, 268, 152 P. 1054, 1058 (1915); *State v. Reynolds*, 120 Idaho 445, 449, 816 P.2d 1002, 1006 (Ct. App. 1991); *State v. Robinson*, 115 Idaho 800, 807, 770 P.2d 809, 816 (Ct. App. 1989); *State v. Danson*, 113 Idaho 746, 749, 747 P.2d 768, 771 (Ct. App. 1987). The desire for success should never induce a prosecutor to obtain a verdict by argument based upon anything except the evidence in the case and the conclusions legitimately deducible from the law applicable to the same. *Givens*, 28 Idaho at 268, 152 P. at 1058. Appeals to emotion, passion or prejudice of the jury through use of inflammatory tactics are improper. *State v. Smith*, 117 Idaho 891, 898, 792 P.2d 916, 923 (1990); *State v. Phillips*, 144 Idaho 82, 87, 156 P.3d 583, 588 (Ct. App. 2007). Although we have recognized the imposition of certain well-accepted restrictions beyond which the

7

prosecutor's argument may not go without running afoul of its function, the propriety of a given argument will depend largely on the facts of each case. *Reynolds*, 120 Idaho at 449-50, 816 P.2d at 1006-07. *See also Darden v. Wainwright*, 477 U.S. 168 (1986). The function of appellate review is not to discipline the prosecutor for misconduct, but to ensure that any such misconduct did not interfere with the defendant's right to a fair trial. *Reynolds*, 120 Idaho at 451, 816 P.2d at 1008. *See also State v. Ruth*, 102 Idaho 638, 640-41, 637 P.2d 415, 417-18 (1981).

United States Supreme Court precedent counsels that the reviewing court must examine the prosecutor's conduct in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the strength of the evidence against the defendant. *See Darden*, 477 U.S. at 178-83 (rejecting due process claim based on the individual circumstances of the case, including the trial judge's subsequent instructions to the jury and the strong weight of the evidence against the petitioner); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-45 (1974) (rejecting due process claim after considering the likely impact of the prosecutor's remark when viewed in relation to the entire trial, and the trial court's instructions to the jury).

Snowball first asserts that the prosecutor committed misconduct when she urged the jury to consider evidence of his violation of the no-contact order, which was admitted for a limited purpose, as being indicative of Snowball's bad character. The prosecutor stated:

> He had no regard to a court order that told him to have no contact with Whitnee Ward. No exceptions. That means he couldn't write her a letter. He couldn't-- definitely not tell her not to come to court, to not testify as to things that did or did not happen.
> This defendant has no regard for the law. He didn't follow a no-contact order. He even told the officers--that [the deputy] testified to [sic] that he would continue to try to contact Whitnee.

Prosecutors may not "unduly emphasize irrelevant facts introduced at trial," *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007), or "argue as substantive evidence matters admitted for limited evidentiary purposes." *Hairston*, 133 Idaho at 507-08, 988 P.2d at 1181-82 (stating that although the prosecutor's statements were clearly improper, the verdict was not affected by this improper conduct given the overwhelming evidence against the defendant in this case).

Snowball further asserts that the prosecutor committed misconduct when she urged the jury to consider the public policy concerns behind the witness intimidation statute in order to determine Snowball's guilt or innocence. The prosecutor stated:

8

> The reason why we have these types of laws are so that victims can feel safe, to be part of the criminal proceedings, so that the victim is not influenced or intimidated to come in here and tell the truth, to come in here and get justice. That is why we have these laws. That's why we, as the state, is [sic] prosecuting this case. We have these laws for a reason.

Argument for a conviction in order to protect the public and the rights of victims are outside the boundaries of proper closing arguments. *State v. Beebe*, 145 Idaho 570, 576, 181 P.3d 496, 502 (Ct. App. 2007) (finding ultimately that the prosecutor's comments about protecting the public and rights of victims was not harmless because the state's evidence against the defendant was far from overwhelming). Nevertheless, it is not enough that a prosecutor's remarks are undesirable or even universally condemned. The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden*, 477 U.S. at 181.

The trial in this case was brief and straightforward. The state called the deputy prosecutor who testified that the underlying domestic battery case was filed against Snowball and that Snowball's girlfriend was the complaining victim. The state called the officer who investigated the domestic battery case who testified that after his investigation he issued a domestic battery citation to Snowball resulting in his arrest. The state also called the jail officer who discovered the letter and the no-contact order. He testified that after making Snowball aware of his *Miranda* rights, Snowball confessed to having written the letter and having mailed it surreptitiously in another inmate's outgoing mail. He testified that Snowball's explanation for having written the letter to his girlfriend was because she was naïve about the way the court system worked. Aside from cross-examination by defense counsel, no witnesses were presented by the defense. With the main focus at trial being the content of the letter which Snowball admitted writing and sending to his girlfriend, we cannot say that the challenged comments by the prosecutor regarding violation of the no-contact order, and the law's intent to protect victims, so infected the trial with unfairness as to make the resulting conviction a denial of due process. Consequently, because Snowball failed to establish a violation of a constitutional right, his claim of fundamental error fails under the first prong established by *Perry*, ___ Idaho at ___, ___ P.3d at ___.

## III.

## CONCLUSION

The district court abused its discretion when it admitted evidence of the no-contact order under I.R.E. 404(b), however, the error was harmless. Considering the prosecutor's challenged statements in context and in light of the entire trial, assessing the severity of the statements, and the strength of the evidence against Snowball, said statements do not constitute a violation of due process, and therefore do not amount to fundamental error warranting vacating the conviction. Accordingly, we affirm Snowball's judgment of conviction for attempted intimidating a witness.

Judge MELANSON, **CONCURS**.

Judge GRATTON, **SPECIALLY CONCURRING**

I agree that any error regarding the admission of evidence relative to the no-contact order was harmless. However, I disagree that the admission of evidence relative to the no-contact order was error. The evidence regarding the no-contact order was highly relevant, under the circumstances, to demonstrate motive and intent. Snowball's intent in writing the letter was the issue at trial. While the majority opinion holds that his intent is "clear" from the letter itself, with which I agree, Snowball made every effort to convince the jury and, frankly, us on appeal, that his intent was "a close question." In fact, Snowball has attempted to characterize the letter as "an attempt to simply apprise his girlfriend of her options." It is far more likely that he would have taken the risk of violating the no-contact order to influence or intimidate her, rather than to merely apprise her of her options. Therefore, his intent and motive to intimidate, rather than inform, is further demonstrated by the fact that he wrote the letter in the face of violating the no-contact order. Moreover, the evidence regarding the no-contact order, as explained by both the district court and the prosecutor, has relevance for context. While the no-contact order evidence may not fit squarely within the confines of relevance under the "complete story principle," *State v. Blackstead*, 126 Idaho 14, 18, 878 P.2d 188, 192 (Ct. App. 1994), it does have contextual relevance. The State is entitled to present a full and accurate account of the circumstances of the commission of the crime, and if such an account also implicates the defendant in the commission of other crimes or wrongs, the evidence should be admissible. The jury should be able to base its decision on a complete understanding of the events, regardless of whether the description of the events also implicated the defendant in other wrongdoing. *See State v. Izatt*, 96 Idaho 667, 670,

534 P.2d 1107, 1110 (1975). I would hold that the admission of the evidence regarding the no-contact order was proper.

I agree that the challenged statements made by the prosecutor do not constitute a violation of due process and, therefore, do not amount to fundamental error. However, I do not agree that the prosecutor's statements constituted misconduct at all. Prior to the prosecutor's challenged comment relating to the evidence of the no-contact order, the prosecutor stated:

> And the evidence that's been presented to you today is this defendant, Randolph Mark Snowball, admitted to writing this letter and sending it to Whitnee Ward, who was a protected party in a no-contact order and also the witness in an underlying domestic battery.
> But really what the state is focusing on is the impeding, influencing. So the no-contact order and the domestic battery that gives you a context as to what was going on in this case, but the state doesn't have to prove that that was a domestic battery. The state doesn't have to prove that there was a violation of the no-contact order. The state has to prove to you today that there was an attempted intimidation, influence or impeding of a state witness.

Thus, the prosecutor's argument, taken as a whole and in context, was not an improper comment on the evidence or in excess of the reasonable inferences therefrom and, thus, did not amount to misconduct. In addition, I do not believe the prosecutor engaged in misconduct by improperly urging the jury to consider public policy concerns. The prosecutor did not ask the jury to vindicate the rights of this or any victim. The prosecutor did not ask the jury to protect or vindicate the public in general. The prosecutor merely explained that the purpose of the law was to protect witnesses from being intimidated so that they can come to court and testify without fear in furtherance of the truth and justice. Explaining the purpose behind the law, without appealing to the jury to do anything, or base its decision on anything outside the evidence, is not misconduct.

11